UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENA MOORE ET AL                                                                   Plaintiffs

v.                                                                    Civil Action No. 3:21-cv-232

HUMANA, INC. ET AL.                                                                Defendants

\* \* \* \* \*

## ORDER

Defendants Humana Inc. ("Humana"), the Board of Directors of Humana Inc. ("Board"), and the Humana Retirement Plans Committee ("Committee") (collectively, "Defendants") move to dismiss Plaintiffs' Complaint. [DE 23]. Plaintiffs Kena Moore, Timothy K. Sweeney, Russel A. Hohman, Susan M. Smith and Veronica Cargill, individually and on behalf of Humana's Retirement Saving Plan ("Plan") and all others similarly situated ("Plaintiffs"), responded [DE 32], and Defendants replied. [DE 34]. A third party, the Chamber of Commerce of the United States of America ("Chamber"), moved for leave to participate as amicus curiae. [DE 24]. Plaintiffs filed a response objecting to the Motion [DE 33], and the Chamber replied. [DE 35]. Plaintiffs also filed a notice of supplemental authority in support of their opposition to the Chamber's motion [DE 36]. Defendants filed a notice of supplemental authority in support of their motion to dismiss. [DE 37]. Plaintiffs filed a response to Defendants' notice of supplemental authority and notice of supplemental authority in support of Plaintiffs' opposition to Defendants' motion to dismiss. [DE 38]. These matters are ripe. For the reasons below, Defendant's Motion to dismiss [DE 23] is **DENIED** and the Chamber's motion to participate as amicus curiae [DE 24] is **DENIED.**

1

## BACKGROUND[1]

Plaintiffs were employees for Humana, who sponsored the Plan. [DE 17 at 82]. The individual and a proposed class of similarly situated Plaintiffs participated in the Plan. [*Id.* at 78-92]. The Plan's purpose was "to provide a source of retirement income and to encourage and assist qualified Employees in maintaining a regular savings program." [*Id.* at 88]. Humana appointed the Committee, through its Board, to ensure Plan fees and expenses, including recordkeeping and administrative fees, were reasonable. [*Id.* at 83]. All Defendants were fiduciaries of the Plan. [*Id.* at 90].

The alleged Class Period is April 13, 2015 through the date of judgment. [*Id.* at 78]. During the Class Period, Charles Schwab ("Schwab") was the Plan's recordkeeper. [*Id.* at 91]. The Plan conducted a Request for Proposal ("RFP") in 2014, negotiating recordkeeping fees for the Class Period of $37 per participant. [*Id.* at 92-93]. At that time, the Plan had over 46,000 participants and billions of dollars in assets. [*Id.* at 93]. By the end of 2015, the Plan had over 49,000 participants. [*Id.*]. In 2019, the Plan's fiduciaries negotiated recordkeeping fees of $23 per participants when the Plan had almost 50,000 participants and over $5 billion in assets. [*Id.* at 93-94]. In 2021, the recordkeeping fee increased to $28 per participant. [*Id.* at 93].

Plaintiffs sued under the Employee Retirement Income Security Act ("ERISA"). [*Id.* at 78-79]. They allege two claims, one of breach of fiduciary duty of prudence against the Committee, and one of failure to adequately monitor other fiduciaries against the Board and Humana. [*Id.* at 95-98]. Defendants now move to dismiss Plaintiffs' amended complaint, arguing the allegations are not plausibly pled and the Chamber moves to participate as amicus curiae. [DE 23; DE 24].

---

[1] The following background is taken from the Amended Complaint. [DE 17].

## DISCUSSION

### I. Motion for Leave to Participate as Amicus Curiae [DE 24].

*a. Standard*

"[P]articipation as an amicus to brief and argue as a friend of the court was, and continues to be, a privilege within the sound discretion of the courts, depending upon a finding that the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice." *United States v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991) (internal citations and quotations omitted). The historical purpose of an amicus "was to provide impartial information on matters of law about which there was doubt, especially in matters of public interest." *Id.* at 164. In determining whether to grant leave to file amicus briefing, courts consider several factors, including adequate representation, cognizable direct interest in the outcome, and whether the proposed amici addresses matters or advances arguments different from those raised by the parties. *See Nat'l Air Traffic Controllers Ass'n, MEBA, AFL-CIO v. Mineta*, No. 99CV1152, 2005 WL 8169395, at *1 (N.D. Ohio June 24, 2005). "District courts focus on both the usefulness of the brief and the timeliness of the brief." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, No. 1:15-CV-1191, 2017 WL 11454764, at *1 (W.D. Mich. Oct. 30, 2017).

*b. Discussion*

The Court finds that the Chamber's appearance as amicus curiae would not be of substantial assistance to the Court. The Chamber appears to be advocating on behalf of Defendants, rather than "provid[ing] *impartial* information" to the Court. *State of Mich.*, 940 F.2d at 164. Although the Chamber's proposed amicus brief presents some unique public policy arguments focusing on the outcome if the Court were to deny Defendants' motion to dismiss, such arguments are not appropriate for the Court to consider here, where only the current law is

applicable to the Court's analysis. *See Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n. 34 (1981) ("once Congress addresses a subject . . . [t]hereafter, the task of the federal courts is to interpret and apply statutory law, not to create common law"). Furthermore, both parties are adequately represented in this matter. *See Gray v. McDonald's USA, LLC*, No. 2:10-CV-2779-JPM-TMP, 2012 WL 12868278, at *2 (W.D. Tenn. Feb. 28, 2012). Additionally, Defendants already raise some of the same issues in their motion to dismiss that the Chamber raises in the amicus brief, which does not aid the Court. *See BancInsure, Inc. v. U.K. Bancorporation Inc./United Kentucky Bank of Pendleton Cty., Inc.*, 830 F. Supp. 2d 294, 307 (E.D. Ky. 2011).

In short, the amicus brief presents nothing that is "useful, or otherwise necessary to the administration of justice." *State of Mich.*, 940 F.2d at 165. The Court thus finds that the proposed amicus brief will not aid the Court in deciding the issues before it. Therefore, the Chamber's motion to participate as amicus curiae [DE 24] is **DENIED**.

**II.     Motion to Dismiss [DE 23].**

   *a. Standard*

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561

F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to a summary judgment.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

    b. *Discussion*

        i. *Breach of Fiduciary Duty of Prudence (against the Committee)*

Plaintiffs allege that the Committee had fiduciary duties of prudence under ERISA and breached these duties by failing "to control the administrative and recordkeeping expenses of the

5

Plan." [DE 17 at 96]. Defendants argue that Plaintiffs' breach of fiduciary duty claim should be dismissed because Plaintiffs make only conclusory allegations. [DE 23 at 129]. Defendants argue that Plaintiffs acknowledge Defendants used RFPs to select the recordkeeper, which precludes any claim they acted imprudently. [*Id.*]. They also argue that using RFPs reduced recordkeeping fees, that one RFP prevailing does not suggest a defective process, and that an increase in fees does not plausibly suggest an imprudent process. [*Id.* at 129-32]. Defendants also argue that Plaintiffs cannot maintain their claim based on the outcome of the RFP process. [*Id.* at 133-36].

ERISA authorizes a plan participant to bring a civil suit against plan fiduciaries for breaches of the fiduciaries' duties of loyalty and prudence. *See* 29 U.S.C. § 1132(a)(2). Setting forth the duties of a fiduciary, ERISA states:

> [a] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan.

29 U.S.C. § 1104(a)(1).

Under ERISA's duty of prudence, a fiduciary must discharge his duties "with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015) (quoting U.S.C. § 1104(a)(1) (internal quotation marks omitted)). The Court focuses on "whether the fiduciary engaged in a reasoned decision-making process, consistent with that of a prudent man acting in a like capacity."

6

*Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015) (quoting *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 723 (6th Cir. 2000)). The "content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, [so] the appropriate inquiry will necessarily be context specific." *Id.* at 385 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014)–72).

Plaintiffs allege that Defendants' RFP "process was clearly deficient since it resulted in recordkeeping fees above industry averages for jumbo plans and amounts paid by similarly-situated plans. In 2014, the Plan failed to negotiate a recordkeeping fee better than $37 per participant." [DE 17 at 93]. Plaintiffs allege that the RFP was deficient because "the Plan could have negotiated a lower [recordkeeping] price." [*Id.*]. Plaintiffs state that the "cost of providing recordkeeping services often depends on the number of participants in a plan." [*Id.* at 92]. Plaintiffs allege a prudent fiduciary would "remain informed about overall trends in the marketplace regarding the fees being paid by other plans, as well as the recordkeeping rates that are available by conducting [an RFP] in a prudent manner." [*Id.*]. They allege that during the Class Period, between 2014-2019, the Plan had over 48,000 participants, over $3.4 billion in assets, and a $37 fee per participant, and that plans with less participants negotiated lower fees. [*Id.* at 80, 93-94]. Plaintiffs include a chart comparing similarly situated plans, including a comparison of number of participants, amount of assets, and recordkeeping fees paid. [*Id.* at 94]. Each of the plans on the chart paid recordkeeping fees less than $37 per member. [*Id.*]. If Defendants had acted as prudent fiduciaries, Plaintiffs allege, Defendants would have negotiated similarly low recordkeeping fees. [*Id.* at 92-94]. Defendants' failure to do so, Plaintiffs also allege, subjected beneficiaries to higher fees, causing them to lose "not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on

7

unnecessary fees would have earned over time." [*Id.* at 80 (citing *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016))].

These allegations are enough to survive a motion to dismiss because, if true, they could establish that the Committee failed to act as a prudent fiduciary. *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022) (overruling dismissal and remanding for consideration of whether claim for excessive recordkeeping fees breached duty of prudence); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) ("whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss"); *Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2021 WL 1212579, at *11 (E.D. Mich. Mar. 31, 2021) ("Plaintiffs have made sufficient allegations related to reviewing, monitoring and ensuring that the recordkeepers 'were being paid reasonable and not excessive fees' . . . [that] dismissal would be inappropriate"); and *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB (JCX), 2017 WL 2930839, at *11 (C.D. Cal. Jan. 30, 2017) ("Plaintiffs have alleged Plan participants paid recordkeeping fees significantly in excess of competitive terms. . . when information was available to Plan fiduciaries that could have mitigated or avoided those losses. Those allegations are sufficient to survive a motion to dismiss.").

      ii.    *Failure to Adequately Monitor Other Fiduciaries (against the Board and Humana)*

The Board and Humana argue that Plaintiffs' failure to adequately monitor other fiduciaries claim should be dismissed only because it is derivative of their breach of fiduciary duty claim. [DE 23 at 136-7]. Because Plaintiffs' breach of fiduciary duty claim remains, their failure to adequately monitory other fiduciaries claim remains as well.

**CONCLUSION**

For these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendants' Motion to Dismiss [DE 23] is **DENIED**.

(2) The Chamber of Commerce of the United States of America's Motion for Leave to Participate as Amicus Curiae [DE 24] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

March 30, 2022

Cc: Counsel of record

9