# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| KENA MOORE, TIMOTHY K. SWEENEY, RUSSEL A. HOHMAN, SUSAN M. SMITH and VERONICA CARGILL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HUMANA INC., THE BOARD OF DIRECTORS OF HUMANA INC., THE HUMANA RETIREMENT PLANS COMMITTEE and JOHN DOES 1-30. <br><br> Defendants. | **CIVIL ACTION NO.:** <br> 3:21-cv-00232-RGJ |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. STANDARD OF REVIEW ............................................................................................ 1

III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................. 2

IV. ARGUMENT .................................................................................................................. 3

    A. The Sixth Circuit's Decisions in *CommonSpirit* and *TriHealth* are Not Intervening Changes in Controlling Law ................................................................................... 3

    B. Plaintiffs Have Adequately Alleged A Plausible Claim for Breach of Fiduciary Duty Under the Standard Articulated in *CommonSpirit* ............................................... 4

        1. Overview of the Plan ........................................................................................ 4

        2. The Plan's Recordkeeping and Administrative Costs Were Excessive During the Class Period ................................................................................................. 5

V. CONCLUSION ............................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Davie v. Mitchell*,
291 F.Supp.2d 573 (N.D. Ohio 2003)......................................................................................2

*Dualite Sales & Servs., Inc. v. Moran Foods, Inc.*,
2005 WL 2372847 (S.D. Ohio Sept. 26, 2005) .......................................................................3

*Forman v. TriHealth, Inc.*,
-- F.4th --, 2022 WL 2708993 (6th Cir. July 13, 2022) ..........................................................1

*J.P. v. Toft*,
2006 WL 689091 (S.D. Ohio Mar. 15, 2006)..........................................................................3

*MacArthur v. San Juan Cnty.*,
405 F.Supp.2d 1302 (D. Utah 2005)........................................................................................2

*Pegg v. Davis*,
2009 WL 5194436 (S.D. Ohio Dec. 22, 2009) .......................................................................3

*Rodriguez v. Tenn. Laborers Health & Welfare Fund*,
89 Fed. Appx. 949 (6th Cir. 2004)...........................................................................................2

*Smith v. CommonSpirit*,
37 F.4th 1160 (6th Cir. 2022) ..................................................................................................1

*Tibble v. Edison, Int'l.*,
843 F.3d 1187, 1198 (9th Cir. 2016) .......................................................................................5

**Statutes**

29 U.S.C. §§ 1109 ........................................................................................................................2

29 U.S.C. §§ 1132 ........................................................................................................................2

**Other Sources**

The Employee Retirement Income Security Act of 1974 ("ERISA") ............................................2

Plaintiffs Kena Moore, Timothy K. Sweeney, Russel A. Hohman, Susan M. Smith, and Veronica Cargill (together, "Plaintiffs"), by and through their attorneys, respectfully submit this opposition to Defendants'[1] Reconsideration Motion.[2]

## I. INTRODUCTION

The Court should deny Defendants' Reconsideration Motion of the Court's March 31, 2022 Order denying Defendants' motion to dismiss in its entirety (ECF No. 39). The Order denied Defendants' motion to dismiss because, under the long-standing *Iqbal/Twombly* pleading standards, Plaintiffs more than adequately alleged facts to support claims that Defendants acted imprudently in administering the Plan. The Reconsideration Motion does not set forth any valid basis for reconsideration.

First, the *Smith v. CommonSpirit*, 37 F.4th 1160 (6th Cir. 2022) and the following *Forman v. TriHealth, Inc.*, -- F.4th --, 2022 WL 2708993 (6th Cir. July 13, 2022) decisions do not constitute intervening changes in controlling law because neither case established a "bright line rule" regarding the claims ERISA plaintiffs can and cannot allege on behalf of a retirement plan.

Second, *CommonSpirit* represents a narrow, case specific decision that is wholly distinguishable from the present matter, and *Forman* of course, did not even address the adequacy of pleadings related to recordkeeping and administration allegations, the crux of this matter.

As such, the Court should deny Defendants' Reconsideration Motion.

## II. STANDARD OF REVIEW

---

[1] "Defendants" refers collectively to Humana, Inc. ("Humana"), The Board of Directors of Humana, Inc. ("Board"), The Humana Retirement Plans Committee ("Committee"), and John Does 1-30.

[2] Defendants' Motion for Reconsideration of the Court's Order Denying Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 43) is referred to herein as "Defs. Mem." or "Reconsideration Motion." All references to "¶, "Amended Complaint," or "Complaint" are to the First Amended Complaint (ECF No. 17).

1

The Sixth Circuit has stated, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or, (3) a need to correct a clear error or prevent manifest injustice." *Id.* "Motions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls…attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Davie v. Mitchell*, 291 F.Supp.2d 573, 634 (N.D. Ohio 2003). As the court in *MacArthur v. San Juan Cnty.* stated, a motion for reconsideration "do[es] not provide litigants with an opportunity for a 'second bite at the apple' or allow them like Emperor Nero, to 'fiddle as Rome burns', or license a litigation 'game of hopscotch', allowing parties to switch from one legal theory to a new one 'like a bee in search of honey.'" *MacArthur v. San Juan Cnty.*, 405 F.Supp.2d 1302, 1305-06 (D. Utah 2005).

### III.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs commenced this action with the filing of a Class Action Complaint on April 13, 2022 (ECF No. 1). Plaintiffs filed an Amended Complaint on August 26, 2021 (ECF No. 17). In the Amended Complaint, Plaintiffs allege Defendants breached their fiduciary duties under §§ 409 and 502 of ERISA,[3] 29 U.S.C. §§ 1109 and 1132, by, *inter alia*, failing to monitor and control the Plan's recordkeeping and administrative costs, which were excessive during the Class Period. ¶¶ 58-74. On September 27, 2021, Defendants filed their Motion to Dismiss Plaintiffs' First

---

[3] The Employee Retirement Income Security Act of 1974.

2

Amended Complaint (ECF No. 23).  On October 18, 2021, Plaintiffs filed their Memorandum of Law In Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 32).  On November 1, 2021, Defendants filed their Reply In Support of Motion to Dismiss (ECF No. 34).  On March 31, 2022, the Court entered an Order denying Defendants' motion to dismiss in its entirety (ECF No. 39).  Defendants filed an Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint on April 14, 2022 (ECF No. 40).  The pending Reconsideration Motion followed on July 20, 2022 (ECF No. 43).  Defendants ask this Court to reconsider its decision on the motion to dismiss alleging the Sixth Circuit's decisions in *Smith v. CommonSpirit* and *Forman v. TriHealth, Inc.* would have affected how the Court decided the motion to dismiss.

## IV.   ARGUMENT

### A. The Sixth Circuit's Decisions in CommonSpirit and TriHealth are Not Intervening Changes in Controlling Law

"Motions for Reconsideration serve a limited function, and are generally only warranted when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Pegg v. Davis*, 2009 WL 5194436, at *1 (S.D. Ohio Dec. 22, 2009) (citing *Dualite Sales & Servs., Inc. v. Moran Foods, Inc.*, 2005 WL 2372847, at *1 (S.D. Ohio Sept. 26, 2005)).  Motions for Reconsideration "are not intended to relitigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Pegg*, 2009 WL 5194436, at *1 (citing *J.P. v. Toft*, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006)).

Here, Defendants rely on the first factor: intervening change of controlling law.  But the decision in *CommonSpirit* does not create the type of clear-cut rule regarding pleading requirements in breach of fiduciary duty cases that affect the Court's March 31, 2022 Order.

3

### B. Plaintiffs Have Adequately Alleged A Plausible Claim for Breach of Fiduciary Duty Under the Standard Articulated in *CommonSpirit*

While Defendants suggest the Sixth Circuit's decisions in *CommonSpirit* and *TriHealth* warrant a reevaluation of the March 2022 motion to dismiss decision, a closer reading of the Sixth Circuit's decisions demonstrates these cases are not instructive here.

First, with respect to "recordkeeping" allegations, the complaint in *CommonSpirit* boiled down to the following: "CommonSpirit hired Fidelity to provide recordkeeping services for the entire plan, and it paid a flat annual fee of between $30 and $34 per person for this service. Smith alleges that this fee was too high, citing industry average costs of $35 per person for recordkeeping and administration for smaller plans." 37 F.4th at 1169. As addressed more fully *infra*, Plaintiffs' allegations regarding the Plan's excessive recordkeeping fees here are far more robust.

To borrow a phrase from Defendants' motion to dismiss, a comparison of Plaintiffs' claims here to the facts alleged in *CommonSpirit* is not an "apples-to-apples" comparison. Here, Plaintiffs' Complaint challenges the Plan's recordkeeping and administrative costs were excessive – not the Plan's fund lineup – and alleges several factors that give rise to a plausible inference that Defendants breached their fiduciary duties. The totality of circumstances included:

1. **Overview of the Plan**

Humana established the Plan "to provide a source of retirement income and to encourage and assist qualified Employees in maintaining a regular savings program on a before-tax and/or an after tax basis." ¶ 42. The Plan is a "defined contribution" or "individual account" plan that provides for each participant and for benefits based solely upon the amount contributed to those accounts. ¶ 43. Thus, "retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account." *Id.* In a plan such as this, "[b]eneficiaries subject to higher fees…lose not only the money spent on higher fees, but also 'lost investment opportunity;' that is,

4

the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble v. Edison, Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016). Accordingly, every penny saved matters. As of December 31, 2019, the Plan had over $5 billion dollars in assets under management. ¶ 52.

### 2. The Plan's Recordkeeping and Administrative Costs Were Excessive During the Class Period

"Recordkeeping" is a term used to describe a suite of administrative services that include "managed account services, self-directed brokerage, Qualified Domestic Relations Order processing, and loan processing." ¶ 60. "Nearly all recordkeepers in the marketplace offer the same range of services and can provide the services at very little cost." *Id*. As alleged in the Complaint, "[t]he cost of providing recordkeeping services often depends on the number of participants in a plan." ¶ 61. [4] Accordingly, "Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee…[b]ecause recordkeeping expenses are driven by the number of participants in a plan." ¶ 61.

The Plan's recordkeeper during the Class Period was Charles Schwab ("Schwab"). *Id*. at ¶ 58. At all times during the Class Period, the Plan had at least 48,000 participants with billions of dollars in assets making it eligible for some of the lowest fees on the market. *Id*. at ¶ 69. Plan fiduciaries must remain informed about overall trends in the marketplace regarding the fees being paid by other plans, which typically involves conducting a Request for Proposal ("RFP") in a

---

[4] "[T]he actual cost of administrative services is more dependent on the number of participants in the plan." There is no "logical or practical correlation between an increase in administrative fees and an increase in plan assets." Hewitt Associates, LLC, *Be a Responsible Fiduciary: Ask the Right Questions About 401(k) Plan Fees*, Oct. 2008; *see also* Mercer Investment Consulting, Inc., *DC Fee Management – Mitigating Fiduciary Risk and Maximizing Plan Performance* (2013), https://www.mercer.com/content/dam/mercer/

5

prudent manner to determine if recordkeeping and administrative expenses appear high in relation to the general marketplace, and specifically, of like-situated plans. *Id.* at ¶ 64.

While Defendants engaged in a RFP process beginning in 2014, the process was deficient and resulted in recordkeeping fees above industry averages for jumbo plans and amounts paid by similarly-situated plans. *Id.* at ¶ 65. The Plan's per participant recordkeeping and administrative fees were astronomical during the Class Period. In 2014, the Plan had 49,150 participants with account balances yet failed to negotiate a recordkeeping fee better than $37 per participant. *Id.* at ¶ 65. The Complaint alleges similarly-sized plans managed to negotiate recordkeeping fees much lower – sometimes almost half that amount. For example, Fidelity – a recordkeeper for hundreds of plans – recently stipulated that a Plan with tens of thousands of participants and over a billion dollars in assets could command recordkeeping fees as low as $14-21. *Id.* at ¶ 70. In fact, several plans with over 34,000 participants and over $2.5 billion dollars in assets under management paid per participant recordkeeping fees ranging from $25 to $28. *Id.* at ¶ 72. Thus, the Plan, with 46,563 Plan participants with account balances at the end of 2014 should have been able to negotiate a recordkeeping cost in the $20 range as of the start of the Class Period. ¶ 65.

But here are the facts that really set Plaintiffs' allegations apart from those in *CommonSpirit*. **The Plan fiduciaries failed to negotiate a lower price until 2019 when the per participant rate dropped to $23 participant for almost exactly the same number of participants as there were four years earlier.** *Id.* at ¶ 66. Because the *same* Plan with the *same* recordkeeper obtained a lower rate with everything else being equal plausibly pleads a fiduciary breach because Plaintiffs' comparison is to the *same* plan, not a different plan. To make matters worse, in 2021, the recordkeeping fee increased to $28 per participant, which is yet another indication of the Plan's flawed process for setting its administrative and recordkeeping fees. *Id.* at ¶ 67.

6

Further, another indication that the Defendants lacked a prudent process for selecting and monitoring its recordkeeping and administrative fees is that it stayed with the same recordkeeper throughout the Class Period despite the fact that it continued to charge excessive fees. *Id.* at ¶ 73. Despite the fact that the Defendants apparently determined that Schwab was charging an excessive fee of $37 per participant from 2014 to 2019, the Plan decided to continue to use the services of Schwab when it offered to discount its services to $23 per participant in 2019. *Id.* However, almost immediately after obtaining this lower fee, Schwab notified the Defendants that its fee would increase to $28 per participant in 2021. *Id.* Schwab indicated that it needed to charge more because of certain proprietary Schwab target date funds selected by the Defendants. *Id.* The Defendants should not have chosen proprietary funds offered by its own recordkeeper when such a choice resulted in higher recordkeeping fees. *Id.*

As a result of Defendants' failure to negotiate an appropriate per participant recordkeeping fee given the size of the Plan's assets and total number of participants during the Class Period, the Plan and its participants suffered millions of dollars in damages. *Id.* at ¶¶ 66, 74. The above facts are vastly more detailed and compelling than in *CommonSpirit* where plaintiffs alleged a reasonable rate for recordkeeping was $35 per participant on average and the plan itself was charging less than $35 per participant. In *CommonSpirit*, the Sixth Circuit stated Smith alleged "no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances." 37 F.4th at 1169 (citation omitted). With regard to their recordkeeping claim, Plaintiffs in this matter have pled the type of facts that "give the kind of context that could move this claim from possibility to plausibility." *Id.*

7

V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' motion for reconsideration.

Dated: August 10, 2022                `Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
Gabrielle Kelerchian
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com
          gabriellek@capozziadler.com

Donald R. Reavey
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

**KIRK LAW FIRM**

*/s/ Phillip Blair*
Phillip Blair, Esquire
KY Bar ID # 94596
P.O. Box 339
888 US 23 South
Paintsville, KY 41240
Phillip.blair@kirklawfirm.net
Telephone: (606) 297-5888
Facsimile: (606) 297-5870

*Counsel for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2022, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: /s/ *Mark K. Gyandoh*
Mark K. Gyandoh, Esq.