## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF
## KENTUCKY LOUISVILLE DIVISION

### *ELECTRONICALLY FILED*

| | |
|---|---|
| KENA MOORE, TIMOTHY K. SWEENEY, RUSSEL A. HOHMAN, SUSAN M. SMITH and VERONICA CARGILL, individually and on behalf of all others similarly situated, | Civil Action No. 3:21-cv-00232-RGJ-RSE |
| Plaintiffs, | Oral Argument Requested |
| v. | |
| HUMANA INC. and THE HUMANA RETIREMENT PLANS COMMITTEE, | |
| Defendants. | |

### <u>DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF PLAINTIFFS' EXPERT VERONICA BRAY</u>

Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
mabate@kaplanjohnsonlaw.com

Brian D. Boyle (*pro hac vice*)
Deanna Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone: 202-383-5300
Facsimile: 202-383-5414
bboyle@omm.com
derice@omm.com

Catalina Vergara (*pro hac vice*)
Noah Ickowitz (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407
cvergara@omm.com
nickowitz@omm.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND .....................................................................................................2

     A.    The Humana Plan's Recordkeeping Fees ...................................................2

     B.    The Parties' Proffered Experts on Recordkeeping Fees.............................4

III.  LEGAL STANDARD ............................................................................................6

IV.   ARGUMENT...........................................................................................................7

V.    CONCLUSION .....................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashland Hosp. Corp. v. Affiliated FM Ins. Co.*,
  2013 WL 3213051 (E.D. Ky. June 24, 2013) ................................................................. 7

*Brainard v. Am. Skandia Life Assur. Corp.*,
  432 F.3d 655 (6th Cir. 2005) ........................................................................................ 6

*Cunningham v. Cornell University*,
  2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) ............................................................. 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ............................................................................................. 1, 6, 7

*Fields v. Ashford*,
  2019 WL 5704216 (E.D. Mich. Nov. 5, 2019) .............................................................. 6

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ...................................................................................................... 7

*Huang v. TriNet HR III, Inc.*,
  2023 WL 3092626 (M.D. Fla. Apr. 26, 2023) ............................................................. 10

*Madej v. Maiden*,
  951 F.3d 364 (6th Cir. 2020) ........................................................................................ 7

*Marshall v. Northrop Grumman Corp.*,
  2019 WL 4058583 (C.D. Cal. Aug. 14, 2019) ............................................................ 10

*Neal v. Fort*,
  2017 WL 395006 (M.D. Tenn. Jan. 30, 2017) ...................................................... 6, 10, 11

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
  676 F.3d 521 (6th Cir. 2012) ........................................................................................ 7

*Pfeil v. State St. Bank & Tr. Co.*,
  806 F.3d 377 (6th Cir. 2015) ........................................................................................ 4

*Pledger v. Reliance Tr. Co.*,
  2019 WL 4439606 (N.D. Ga. Feb. 25, 2019) .............................................................. 11

*Powell v. Tosh*,
  942 F. Supp. 2d 678 (W.D. Ky. 2013) .......................................................................... 7

*Pride v. BIC Corp.*,
  218 F.3d 566 (6th Cir. 2000) ........................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

*Reed v. MedStar Health, Inc.*,
   2023 WL 5154507 (D. Md. Aug. 10, 2023) ................................................................. 10

*Seawell v. Brown*,
   2010 WL 11561287 (S.D. Ohio Sept. 9, 2010) ........................................................... 11

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ........................................................................... 2, 4, 8, 9

*Troudt v. Oracle Corp.*,
   369 F. Supp. 3d 1134 (D. Colo. 2019) ...................................................................... 9, 10

*United States v. Cunningham*,
   679 F.3d 355 (6th Cir. 2012) .......................................................................................... 6

*United States v. Moody*,
   787 F. App'x 857 (6th Cir. 2019) ................................................................................... 7

**Rules**

Federal Rule of Evidence 702 ......................................................................................... 1

Defendants Humana Inc. and the Humana Retirement Plans Committee (the "Committee," and collectively with Humana Inc., "Defendants" or "Humana"), by counsel and pursuant to Rule 702 of the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), move the Court to exclude the opinions of Plaintiffs' expert Veronica Bray.  Pursuant to Local Rule 7.1(f), Defendants request oral argument on the motion.

## I.    INTRODUCTION

Plaintiffs' only theory of fiduciary breach is that the participants in the Humana Retirement Savings Plan (the "Plan" or "Humana Plan") paid excessive recordkeeping fees beginning on April 13, 2015 (the "Class Period").  To support that theory, Plaintiffs rely on the purported expert opinion of Veronica Bray that the Plan "possibly" could have paid between $12 and $20 per participant per year ("PPPY") for recordkeeping services during the Class Period (Ex. 4 (Bray Depo. Tr.) at 145:15–146:6, DE 97-5),[1] rather the $22 to $37 PPPY that participants actually paid over that time period.[2]

Ms. Bray's opinion is not grounded in any discernible methodology.  She has not explained how she arrived at the $12 to $20 PPPY range she contends the Plan "possibly" could have paid—not in her expert report, and not at her deposition.  Although she references six other plans in her report that she believes are "in line" with her manufactured range (Ex. 2 (Bray Report) ¶¶ 29, 65, DE 97-3), she conceded at her deposition that these plans are neither "comparable" to the Plan nor meant to be

---

[1] "Ex." or "Exs." refers to the exhibits submitted in support of Defendants' concurrently filed Motion for Summary Judgment, DE 97.  Those exhibits are incorporated by reference, so as not to burden the Court with duplicative docket entries.

[2] *See* Ex. 17 (2014 Schwab Services Agreement and Subsequent Amendments) at 4 ($37 PPPY fee in 2014), 171 ($23 PPPY fee in Oct. 2019), 202 ($28 PPPY fee in Feb. 2021), 210 ($22 PPPY fee in Oct. 2022), DE 97-20; *see also* Ex. 1 (Pls.' Resp. to Humana Requests for Admission No. 32–35), DE 97-2.

"benchmarks" for the Plan. *See* Ex. 4 (Bray Depo. Tr.) at 156:17–18, 185:23–186:13, DE 97-5. Ms. Bray attempts to rely on her "experience" to backstop her opinion (*id.* at 144:11–145:1), but she has done nothing to connect that "experience" to the facts of this case. She admitted at her deposition, for example, that she failed to conduct any analysis of the services received by the Humana Plan in exchange for the recordkeeping fees paid (*id.* at 163:24–164:4)—directly contradicting Sixth Circuit precedent that requires Plaintiffs to show that fees were "excessive relative to the services rendered" to pursue a claim for excessive recordkeeping fees. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022). Ms. Bray's opinion is based on nothing more than her own say-so, and that is not enough under *Daubert* and Rule 702 of the Federal Rules of Evidence to qualify her as an expert witness. For these reasons, explained in greater detail below, Ms. Bray's opinion should be excluded.

## II.    BACKGROUND

### A.    The Humana Plan's Recordkeeping Fees

Humana offers its employees the opportunity to participate in the Humana Retirement Savings Plan—a defined-contribution plan governed by the Employee Retirement Income Security Act ("ERISA"). *See generally* Ex. 14 (2015 Plan Document), DE 97-17. Schwab served as the Plan's sole recordkeeper during the relevant period. *See* Exs. 6–13 (2015–2022 Form 5500s), DE 97-9–16. Plaintiffs originally alleged, in error, that Schwab received between $59 and $67 PPPY for administrative and recordkeeping services and that plans of a similar size paid, on average, an approximately $40 PPPY fee. Original Compl. ¶¶ 79, 83, DE 1. After early, informal discovery showed their factual allegations to be false, Plaintiffs amended their Complaint to allege, correctly at the time of filing it, that Schwab received between $23 and $37 PPPY[3] over the Class Period (First Am. Compl. ¶¶ 65–66, DE 17)—fees that were *lower* than the $40 PPPY goalpost they had set in

---

[3] *See supra* fn. 2.

their original Complaint (Original Compl. ¶ 83, DE 1).  Ignoring their prior pleading, Plaintiffs

further alleged in their First Amended Complaint that the Plan "should have been able to negotiate a

recordkeeping cost in the low $20 range from the beginning of the Class Period to the present"—

effectively cutting in half the recordkeeping fee they claimed would have been reasonable for the

Plan, without reason or explanation.  *Compare* First Am. Compl. ¶ 72, DE 17 *with* Original Compl.

¶¶ 79, 83, DE 1.

The parties agree that "the market rate for recordkeeping services has declined over the Class

Period."  Ex. 5 (Swisher Report) ¶¶ 22, 129, DE 97-7; *see also id.* at ¶ 130 (citing PwC report stating

that recordkeeping fees were on a "downward trajectory" between 2015 and 2019); Ex. 2 (Bray

Report) ¶ 28, DE 97-3 (noting a "rapid decline" in retirement plan recordkeeping fees over the

relevant period).  It is thus not surprising that the Plan's fees have also declined, following requests

for proposals ("RFPs") for recordkeeping services that the Committee has conducted every three to

five years with the help of independent, third-party consultants.  At the start of the Class Period, the

Plan's recordkeeping fees were $37 PPPY.  *See* Ex. 17 (2014 Schwab Services Agreement) at 4,

DE 97-20.  Following an RFP in 2019, they were reduced to $23 PPPY.  *See id.* (Oct. 2019

Amendment to Schwab Services Agreement) at 171.  In February 2021, the fees increased from $23

to $28 PPPY because the Plan switched to a target date fund suite with lower investment-

management fees, which reduced the amount available to offset recordkeeping fees.  *Id.* (Feb. 2021

Amendment to Schwab Services Agreement) at 202; Ex. 20 (Sep. 15, 2020 Committee Minutes) at

17, DE 97-23; Ex. 3 (Klein Depo. Tr.) at 88:18–90:7, DE 97-4.[4]  Later, in October 2022, at the

commencement of yet another RFP, the Plan's recordkeeping fees declined again, to $22 PPPY.

---

[4] Although recordkeeping fees were temporarily higher as a result of this change in investment
options, the switch "resulted in an overall net savings to Plan participants" because of the lower
investment management fees associated with the new fund.  Ex. 1 (Pls.' Resp. to Humana RFA
No. 34), DE 97-2.

*See* Ex. 17 (Oct. 2022 Amendment to Schwab Services Agreement) at 210, DE 97-20; Ex. 3 (Klein Depo. Tr.) at 88:3–13, 91:8–92:15, DE 97-4.  To ensure the Plan's fees remained reasonable, the Committee also commissioned independent advisors to conduct annual fee-benchmarking studies over the Class Period, each of which showed that the Plan's fees were in line with the market. *See* Exs. 22–28 (2015–2021 Benchmarking Reports), DE 98, 98-1–6; Ex. 3 (Klein Depo. Tr.) at 52:3–9, DE 97-4; Ex. 1 (Pls.' Resp. to Humana RFA No. 30, 36, 38), DE 97-2.

### B.    The Parties' Proffered Experts on Recordkeeping Fees

As explained in Defendants' concurrently-filed Motion for Summary Judgment, DE 97, in order for Plaintiffs to prevail on their claim that Defendants breached their ERISA fiduciary duties by permitting the Plan to pay excessive recordkeeping fees, they bear the burden of proving that (1) Defendants did not employ a prudent process for monitoring the Plan's recordkeeping fees, and (2) the Plan's fees were "excessive relative to the services rendered."  *CommonSpirit*, 37 F.4th at 1169; *see Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015).  Plaintiffs have proffered the purported expert opinion of Ms. Veronica Bray in an attempt to meet their burden, and Defendants have proffered Mr. Pete Swisher as their expert.  Mr. Swisher has decades of experience serving as an independent fiduciary and consultant for retirement plans, and he is widely recognized as one of the top experts on fiduciary governance in the country.  Ex. 5 (Swisher Report) ¶¶ 2–3, Appendix A (CV), DE 97-7.  He has published numerous articles and white papers about retirement plan and fiduciary issues, including in peer-reviewed publications—and he even wrote "the book" for retirement plan advisors: an 892-page textbook entitled *401(k) Fiduciary Governance: An Advisor's Guide*.  *Id.* ¶¶ 4, 7, Appendix A (CV).  It is no exaggeration to say that Mr. Swisher is a thought leader in his field—who, in addition to the above, speaks regularly at national conferences and is deeply involved in government affairs, providing critical industry feedback for various Department of Labor fee-transparency initiatives.  *Id.* ¶¶ 4, 6.  Ms. Bray, in contrast, is someone who started her

career in the retirement plan industry in a sales role at recordkeeper Paychex Securities (Ex. 2 (Bray Report) ¶ 5, DE 97-3; Ex. 4 (Bray Depo. Tr.) at 39:9–17, DE 97-5); later moved on to a retirement plan advisory firm where she serviced "10 or 12" plan clients (Ex. 2 (Bray Report) ¶ 6, DE 97-3; Ex 4 (Bray Depo. Tr.) at 49:9–18, DE 97-5); and then founded a firm that assists retirement plans with their "search, evaluation, and selection of all retirement plan service providers" (Ex. 2 (Bray Report) ¶ 7, DE 97-3).  She has not published in the retirement field in any meaningful way.  Ex. 2 (Bray Report), Sub-Exhibit 1 (CV), DE 97-3.

Plaintiffs have retained Ms. Bray to opine on two issues: "whether Defendants' actions were consistent with the standard of care practiced by a prudent fiduciary acting in the best interest of Plan participants, and the losses suffered by participants as a result of Defendants' failure to review and negotiate recordkeeping fees."  Ex. 2 (Bray Report) ¶ 1, DE 97-3.  On these issues, Ms. Bray reached only one relevant—albeit wholly unreliable—conclusion in her reports: that Defendants' actions did not comport with the applicable standard of care because the Plan's fees over the Class Period exceeded the $12 to $20 PPPY range she asserts was reasonable.  *Id.* ¶ 65; Ex. 4 (Bray Depo. Tr.) at 144:11–21, DE 97-5.

Ms. Bray admits that the $12 to $20 range she claims is reasonable is "not exact" and she holds the view only that the Plan "possibly" could have achieved fees at those levels.  Ex. 4 (Bray Depo. Tr.) at 145:15–146:7, DE 97-5.[5]  Her reports offer no support for the range.  In her initial report, Ms. Bray references six other 401(k) plans she deems "in line" with her $12 to $20 PPPY range,[6] but she admitted at her deposition that those plans are not "comparable" to the Humana Plan

---

[5] Although she later backtracked, Ms. Bray even conceded that the Plan's $23 PPPY in 2019 was not necessarily too high—putting into further doubt her $12 to $20 range.  *Id.* at 150:14–20 ("I don't know if [$23 PPPY] is too high.  I wouldn't say that it's too high.").

[6] Those plans are: the Federal Express Corporation Pilots' Retirement Savings Plan, Clifton Larson Allen, LLP 401(k) Retirement Plan, BlackRock Retirement Savings Plan, the Vanguard Retirement

and are not "benchmarks" for the Humana Plan. *Id.* at 156:17–18, 185:23–186:13; Ex. 2 (Bray Report) ¶¶ 29, Table 2 (listing plans), 65, DE 97-3. She also admitted that she did not analyze the services provided to the Humana Plan or the services provided to her six plans to determine if they were comparable—and that she could not name a single plan comparable to the Plan that received comparable services for $12 to $20 PPPY during the Class Period. Ex. 4 (Bray Depo. Tr.) at 163:24– 164:4, 175:16–177:11, 179:4–14, DE 97-5.

## III.    LEGAL STANDARD

The district court serves as a "gatekeeper" in deciding whether expert reports or testimony are admissible. *Daubert*, 509 U.S. at 589; *accord United States v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012). Under Rule 702 of the Federal Rules of Evidence, an expert's opinion is admissible only if: (a) it "will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) it "is based on sufficient facts or data"; (c) it "is the product of reliable principles and methods"; and (d) the expert has reliably applied "the principles and methods to the facts of the case." Proponents bear the burden of proving, by a preponderance of the evidence, that each element of Rule 702 is satisfied. *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 592 n.10).

In the Sixth Circuit, it "is 'well within' a district court's discretion to exclude expert testimony when there is an 'absence of meaningful analysis or reasoning.'" *Neal v. Fort*, 2017 WL 395006, at *4 (M.D. Tenn. Jan. 30, 2017) (citing *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005)). Consistent with this principle, failing to proffer a "discernable methodology" merits the exclusion of an expert opinion. *Fields v. Ashford*, 2019 WL 5704216, at *7 (E.D. Mich. Nov. 5, 2019) ("The fundamental flaw with McDonald's opinions is that they do not rest upon any discernible methodology at all, much less a methodology that may be deemed reliable."); *Powell v.*

---

and Savings Plan, the Cargill Partnership Plan, and the Fidelity Plan from the *Moitoso v. Fidelity* stipulation. Ex. 2 (Bray Report) ¶ 29, Table 2, DE 97-3.

*Tosh*, 942 F. Supp. 2d 678, 720 (W.D. Ky. 2013) (excluding opinion "in the absence of a discernible methodology" and finding insufficient "subjective" belief), *adhered to on denial of reconsideration*, 2013 WL 1878934 (W.D. Ky. May 3, 2013).

*Daubert* also precludes "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). To demonstrate that an expert's opinion is reliable, the proponent must prove that it is supported by "more than subjective belief or unsupported speculation" and is instead "supported by 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590 (citation omitted); *see also Madej v. Maiden*, 951 F.3d 364, 375 (6th Cir. 2020) ("Courts have repeatedly found opinions unreliable when they were based more on an expert's 'subjective belief' than on an objective method that can be tested."). Reliance "on anecdotal evidence," the "failure to consider other possible" explanations for a given conclusion, and "subjectivity" are "red flags" that counsel against admission of expert opinions. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). Relatedly, courts have excluded expert opinions as unreliable where an expert failed to "consult, examine, or otherwise analyze all available evidentiary materials." *Ashland Hosp. Corp. v. Affiliated FM Ins. Co.*, 2013 WL 3213051, at *11 (E.D. Ky. June 24, 2013) (citation omitted); *accord United States v. Moody*, 787 F. App'x 857, 862 (6th Cir. 2019) (affirming exclusion of expert opinion because of expert's failure to review relevant materials).

## IV.    ARGUMENT

Ms. Bray offers no discernable methodology for her core opinion: that the Humana Plan's recordkeeping fees were excessive because the Plan purportedly could have obtained recordkeeping services for between $12 and $20 PPPY during the Class Period. *See* Ex. 2 (Bray Report) ¶ 65, DE 97-3. Her opinion is thus unreliable and should be excluded.

While Ms. Bray's report references six plans that allegedly paid lower recordkeeping fees than the Humana Plan (*id.* ¶ 29), those plans do not and cannot support Ms. Bray's purportedly reasonable fee range of $12 to $20 PPPY (*id.* ¶ 65). At her deposition, she conceded that the plans "are not considered comparable plans" to the Humana Plan (Ex. 4 (Bray Depo. Tr.) at 156:17–18, DE 97-5), and are not "benchmarks" for the Humana Plan (*id.* at 185:23–186:13 (defining "benchmarking" as taking "the services that the record keeper's providing to like plans of like sizes and compar[ing] the services and fees from one plan to the other")). Indeed, even if these cherrypicked plans *were* intended to be benchmarks for the Humana Plan—notwithstanding Ms. Bray's testimony to the contrary (*id.*)—they would not be adequate comparators. First, Ms. Bray admitted during her deposition that she used no discernable methodology in selecting the plans. *See*, *e.g.*, *id.* at 167:18–21, 168:24–169:5. Second, she conceded that her analysis of other plans "only went from 2020 to 2022" (*id.* at 176:11–14), meaning that she ignored more than half of the Class Period, even though it is her opinion that there was a "rapid" market-wide decline in recordkeeping fees over that time (Ex. 2 (Bray Report) ¶ 28, DE 97-3). Third, Plaintiffs have offered no evidence to show the plans are actually comparable to the Humana Plan at all, in terms of size or recordkeeping services received.

The six plans referenced in Ms. Bray's opening report thus cannot and do not support her opinion that the Plan could have paid between $12 and $20 PPPY over the Class Period. In Ms. Bray's own words, she included those plans in her report not to provide the kind of apples-to-apples comparisons that *CommonSpirit* requires but "just to kind of give an example of the buying power that these smaller plans had." Ex. 4 (Bray Depo. Tr.) at 154:6–8, DE 97-5. When pressed, she could not name a single comparable plan that paid between $12 and $20 PPPY during the Class Period. *Id.* at 175:16–177:11, 179:4–14. Nor could she explain why she ignored the competitive bids that the Plan obtained over the relevant period through its various RFP processes—despite conceding that

8

RFPs are a "best practice" that help discern reasonable rates in the market. *See* Ex. 2 (Bray Expert Report) ¶ 20(k), DE 97-3 (listing RFPs as "best practice"); Ex. 4 (Bray Depo. Tr.) at 129:7–10, DE 97-5.

Ms. Bray's purported expert opinion is thus based simply on her unsupported and unexplained belief that the Plan could have obtained recordkeeping services for between $12 and $20 PPPY over the relevant period—even though the Plan never received a bid in that range through its RFPs over the relevant period, and even though Ms. Bray cannot cite a single comparable plan that obtained comparable services for recordkeeping fees in that range. *See* Ex. 16 (2014 RFP Executive Overview) at 9, DE 97-19; Ex. 18 (2019 RFP Executive Summary) at 2, DE 97-21; Ex. 4 (Bray Depo. Tr.) at 175:16–177:11, 179:4–14, DE 97-5. To paper over these deficiencies, she cites her "experience" in the industry (Ex. 4 (Bray Depo. Tr.) at 144:11–145:1, DE 97-5)—but that does not constitute a "methodology" (let alone a reliable methodology) under established law.

A methodology "is the process by which the expert relates [their] experience to the facts at hand in order to reach an expert opinion." *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1139–41 (D. Colo. 2019) (excluding expert's opinion on reasonable recordkeeping fee due to lack of methodology and reasoning that "because the relevant methodology by which he reached his conclusions remains undisclosed, [it is] impossible to conclude whether this opinion is reliable").

But here, Ms. Bray disclosed no methodology to tie her experience to the facts of this case. To the contrary, she admitted that she has never even analyzed the recordkeeping services received by the Plan for the fees it paid over the Class Period. Ex. 4 (Bray Depo. Tr.) at 163:24–164:4, DE 97-5 ("Q . . . [Y]ou've not done any analysis to verify whether the services that were actually contracted for by these plans were similar to the services that Humana contracted for in its own recordkeeping arrangement, correct? A Correct."). An analysis that looks solely at price and not at the quality, levels, or types of service conflicts with Sixth Circuit precedent and renders Ms. Bray's opinion

unreliable.  *See CommonSpirit*, 37 F.4th at 1169 (requiring recordkeeping-fee plaintiff to show that fees were "excessive relative to the services rendered").  And a bald reliance on "experience" amounts to an unreliable, unsupported opinion.  *See Troudt*, 369 F. Supp. 3d at 1139–41; *see also Neal*, 2017 WL 395006, at *4 ("Furthermore, the Report contains no explanation of how Mr. Kickirillo's experience informed his conclusions. . . .  [It] is not sufficient for an expert merely to recite his experience without further explanation.").

Numerous courts have excluded an expert's opinions on reasonable recordkeeping fees where, as here, those opinions are supported only by the expert's say-so.  In *Huang v. TriNet HR III, Inc.*, for example—a case brought by the same law firm representing Plaintiffs here—the court excluded the opinion of plaintiffs' recordkeeping expert for failing to demonstrate his methodology was reliable, where he only considered "the recordkeeping fees of several plans incomparable in size and structure to the Plan and relied on his experience to determine what a reasonable fee should have been." 2023 WL 3092626, at *9–10 (M.D. Fla. Apr. 26, 2023).  And many other courts are in accord.  *See Reed v. MedStar Health, Inc.*, 2023 WL 5154507, at *12 (D. Md. Aug. 10, 2023) (excluding recordkeeping-fee opinion on "loss calculations" that was based simply on "experience" and "speculation," and emphasizing that the expert "did not explain a process by which he obtained the specific calculation as to the Plan losses"); *see also, e.g.*, *Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583, at *7 (C.D. Cal. Aug. 14, 2019) (striking opinion on "expected fees for recordkeeping and administrative services"); *Pledger v. Reliance Tr. Co.*, 2019 WL 4439606, at *17–18 (N.D. Ga. Feb. 25, 2019) (excluding recordkeeping-fee expert who "failed to use any objective source of pricing information to determine the baseline prices").[7]

---

[7] Courts within this Circuit have applied these same principles in other contexts.  *See*, *e.g.*, *Seawell v. Brown*, 2010 WL 11561287, at *9 (S.D. Ohio Sept. 9, 2010) (excluding expert opinion as unreliable because the "finding that the Plan suffered $11 million in losses is based on pure speculation . . . [and

*Cunningham v. Cornell University* is also instructive.  There, the district court—in a decision ultimately affirmed by the Second Circuit—excluded expert testimony about "reasonable" recordkeeping fees because, like here, the expert offered "no explanation for how he arrived at" his reasonable-fee pricing, did not explain how his five comparator plans were chosen, and made "no attempt to tie [his reasonable-fee] numbers to his exemplary plans' fees."  2019 WL 4735876, at *9–10 (S.D.N.Y. Sept. 27, 2019).  The *Cunningham* court held that the expert impermissibly relied on his own say-so and did "not use a reliable methodology to determine what a prudent fiduciary would have secured as a recordkeeping fee."  *Id.* at *8.  That is precisely what Ms. Bray has done here, and the Court should come to the same result: It should find Ms. Bray's opinion unreliable and inadmissible under *Daubert*.

## V.    CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Plaintiffs' expert Veronica Bray.

//

//

//

//

//

//

//

//

---

the expert] testified that he performed no statistical analysis . . . . it appears that [the expert] simply created his own method of calculating damages for the purposes of this litigation.  He has pointed to nothing in the literature or elsewhere to show that his method is an accepted method."); *Neal*, 2017 WL 395006, at *4  (excluding opinion in part because expert cited his experience "without further explanation").

Dated: January 16, 2024

Respectfully submitted,

*/s/ Catalina Vergara*

Catalina Vergara (*pro hac vice*)
Noah Ickowitz (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407
cvergara@omm.com
nickowitz@omm.com

Brian D. Boyle (*pro hac vice*)
Deanna Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone: 202-383-5300
Facsimile: 202-383-5414
bboyle@omm.com
derice@omm.com

Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
mabate@kaplanjohnsonlaw.com

*Attorneys for Defendants Humana Inc. and the Humana Retirement Plans Committee*

12

### CERTIFICATE OF SERVICE

I hereby certify that, on January 16, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

*/s/ Catalina Vergara*
*Counsel for Defendants*