# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF
## KENTUCKY LOUISVILLE DIVISION

### *ELECTRONICALLY FILED*

|  |  |
|---|---|
| KENA MOORE, TIMOTHY K. SWEENEY, RUSSEL A. HOHMAN, SUSAN M. SMITH and VERONICA CARGILL, individually and on behalf of all others similarly situated, | Civil Action No. 3:21-cv-00232-RGJ-RSE |
| Plaintiffs, | Oral Argument Requested |
| v. | |
| HUMANA INC. and THE HUMANA RETIREMENT PLANS COMMITTEE, | |
| Defendants. | |

## <u>DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
mabate@kaplanjohnsonlaw.com

Brian D. Boyle (*pro hac vice*)
Deanna M. Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone: 202-383-5300
Facsimile: 202-383-5414
bboyle@omm.com
derice@omm.com

Catalina Vergara (*pro hac vice*)
Noah Ickowitz (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407
cvergara@omm.com
nickowitz@omm.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................3

      A.      There Is No Genuine Issue of Material Fact Regarding the
           Prudence of the Committee's Process for Monitoring Plan
           Recordkeeping Fees ................................................................................3

             1.      The Undisputed Evidence Establishing that Defendants
                  Conducted Multiple Competitive RFPs and Annual
                  Benchmarking Eliminates Any Genuine, Material Dispute
                  as to the Prudence of Their Process ............................................3

             2.      There Is No Genuine Issue of Material Fact About the
                  Committee's RFP or Benchmarking Processes ...........................5

                  a.      Plaintiffs cannot avoid summary judgment by
                      belatedly expanding their expert's opinions to
                      challenge the RFPs.............................................................5

                  b.      Plaintiffs do not raise a genuine issue of material
                      fact about whether the Committee conducted RFPs
                      frequently enough ............................................................6

                  c.      Nothing required the Committee's professional
                      consultants to use the specific benchmarking criteria
                      that Plaintiffs advocate....................................................8

                  d.      Plaintiffs' "continuous negotiation" rule has no
                      basis in the law...............................................................9

                  e.      The modest increase in recordkeeping fees in 2021
                      does not raise a genuine issue of material fact
                      regarding prudence.........................................................11

      B.      Defendants Are Separately Entitled to Summary Judgment
           Because No Reasonable Fact-Finder Could Conclude the Plan's
           Fees Were Excessive Relative to the Services Rendered ......................12

III.    CONCLUSION....................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Birse v. CenturyLink, Inc.*,
   2020 WL 1062902 (D. Colo. Mar. 5, 2020) ....................................................... 8, 9

*Boyd v. Baeppler*,
   215 F.3d 594 (6th Cir. 2000) ................................................................................. 6

*Cryer v. Franklin Res., Inc.*,
   2018 WL 6267856 (N.D. Cal. Nov. 16, 2018) ................................................... 3, 4

*Davis v. Magna Int'l of Am., Inc.*,
   2023 WL 3821807 (E.D. Mich. June 5, 2023) ...................................................... 4

*Ellis v. Fid. Mgmt. Tr. Co.*,
   883 F.3d 1 (1st Cir. 2018) ...................................................................................... 3

*Falberg v. Goldman Sachs Grp., Inc.*,
   2024 WL 619297 (2d Cir. Feb. 14, 2024) .......................................................... 3, 8

*Feinberg v. T. Rowe Price Grp., Inc.*,
   2021 WL 488631 (D. Md. Feb. 10, 2021) .............................................................. 4

*Garthwait v. Eversource Energy Co.*,
   2022 WL 3019633 (D. Conn. July 29, 2022) ......................................................... 9

*Huang v. TriNet HR III, Inc.*,
   2023 WL 3092626 (M.D. Fla. Apr. 26, 2023) .................................................... 3, 4

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022) ................................................................................................ 9

*Hughes v. Nw. Univ.*,
   63 F.4th 615 (7th Cir. 2023) ............................................................................ 9, 14

*In re B&P Baird Holdings, Inc.*,
   759 F. App'x 468 (6th Cir. 2019) .......................................................................... 5

*In Re Omnicom Grp. Inc. ERISA Litig.*,
   2022 WL 18674830 (S.D.N.Y Dec. 23, 2022) ...................................................... 4

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
   2021 WL 3417843 (W.D. Pa. Aug. 3, 2021) ....................................................... 11

*Johnson v. Providence Health & Services*,
   2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ................................................ 10

*Marshall v. Northrop Grumman Corp.*,
   2019 WL 4058583 (C.D. Cal. Aug. 14, 2019) ................................................... 3, 4

*Mateya v. Cook Grp. Inc.*,
   2023 WL 4608536 (S.D. Ind. June 16, 2023) ...................................................... 13

*Mator v. Wesco Distrib., Inc.*,
   2022 WL 3566108 (W.D. Pa. Aug. 18, 2022) ..................................................... 14

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*McCool v. AHS Mgmt. Co.*,
   2023 WL 2752400 (M.D. Tenn. Mar. 31, 2023) ................................. 4

*Moore v. Humana, Inc.*,
   2022 WL 20766503 (W.D. Ky. Mar. 31, 2022) ............................. 5, 9

*Moore v. Humana, Inc.*,
   2022 WL 20766504 (W.D. Ky. Dec. 2, 2022) ................................ 15

*Nye v. CSX Transp., Inc.*,
   437 F.3d 556 (6th Cir. 2006) ......................................................... 6

*Partrich v. Farber*,
   2009 WL 4947913 (E.D. Mich. Dec. 14, 2009) .............................. 5

*Sigetich v. Kroger Co.*,
   2023 WL 2431667 (S.D. Ohio Mar. 9, 2023) ................................. 8

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ........................................... 2, 11, 12

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015) ...................................................................... 9

*Troudt v. Oracle Corp.*,
   2019 WL 1006019 (D. Colo. Mar. 1, 2019) ............................... 7, 10

*Troudt v. Oracle Corp.*,
   369 F. Supp. 3d 1134 (D. Colo. 2019) ......................................... 12

*Vellali v. Yale University*,
   2022 WL 13684612 (D. Conn. Oct. 21, 2022) ............................... 7

**Other Authorities**

U.S. Dep't of Labor, *2021 Instructions for Form 5500*,
   https://bit.ly/3SGrafM ................................................................. 13

U.S. Dep't of Labor, *Meeting Your Fiduciary Responsibilities* (2021),
   https://bit.ly/3kh7LB3 ................................................................. 11

U.S. Dep't of Labor, *Understanding Retirement Plan Fees and Expenses* (2011),
   bit.ly/3PRgiLY ............................................................................. 11

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................... 5

## I.     INTRODUCTION

Plaintiffs' opposition tries to transform the Court's decisions allowing this case to proceed to discovery into a free pass to trial, absolving them of responsibility for developing evidence to support their claims.  That is not how it works.  The Court's prior decisions held only that it was *possible* that Plaintiffs might ultimately be able to prove their claims, if they were able to develop evidence that the Committee's RFP processes were flawed and the Humana Retirement Savings Plan's recordkeeping fees were excessive relative to the services rendered in the relevant period.  Now that discovery is complete, Plaintiffs are empty-handed.  Rather than supporting Plaintiffs' allegations, the discovery record soundly refutes them:  The evidence shows that the Committee conducted thorough, competitive RFPs every three to five years and supplemented those RFPs with consultant-led annual benchmarking exercises that confirmed the Plan's recordkeeping fees were at the low end of the range compared to other large plans.

Confronted with that record, Plaintiffs rely almost entirely on their expert, Veronica Bray, to try to manufacture a dispute about the soundness of the Committee's process and the reasonableness of the Plan's fees.  But in doing so, Plaintiffs gloss over Ms. Bray's admissions that she was *not* engaged to offer an opinion on the RFP processes themselves, identified *no* comparable plans, and performed *no* analysis comparing the services the Plan received from Schwab to those of any plan she claims paid lower fees in the relevant period.  Those admissions sink Plaintiffs' case, leaving them with no evidence at all on essential pieces of their claim.

The process opinions Ms. Bray did offer—that the Committee was required to conduct an RFP every three years, rather than "every 3-5 years" as she opined was a "best practice"; that the Committee's consultants were required to use different criteria to form their benchmarking comparison groups; and that the Committee was required to continually negotiate recordkeeping fees—do not raise a genuine issue of material fact.  Those opinions have no foundation in the

1

law, which does not impose rigid rules like Plaintiffs advocate but instead affords fiduciaries significant flexibility in designing reasonable processes to oversee plan expenses. And Plaintiffs' argument that the modest increase in recordkeeping fees in 2021 reflects a process failure rests on unfounded speculation that the Committee could have avoided the increase by negotiating more aggressively with Schwab, even though the Committee at that time secured a net *decrease* in overall Plan fees due to a substantial reduction in investment-management fees.

Plaintiffs' opposition also confirms that they cannot carry their burden to show that the Plan's fees were "excessive relative to the services rendered," *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022)—a separate required element of their claim and an independent basis for granting summary judgment for Defendants. Ms. Bray's opinion that Plan recordkeeping fees should have been between $12 and $20 per participant per year ("PPPY") is so unsupported that the Court should exclude it. But even if the Court considers Ms. Bray's opinion, it is not enough to create a genuine issue of material fact. Ms. Bray admitted that she performed no analysis to confirm that any plan she claims paid lower fees also received the same level of service that the Plan did. She also admitted that she calculated fees for those other plans only for 2020–2022—not the 2015–2019 period that is the primary focus of Plaintiffs' claims. The drop in fees resulting from the 2019 RFP does not help Plaintiffs, because there is no genuine issue of material fact about the reasonableness of the Plan's fees between 2015 and 2019. The evidence, including annual consultant benchmarking reports and objective industry survey data, uniformly shows the Plan's fees were reasonable throughout the relevant period.

Plaintiffs cite no case denying summary judgment for defendants on facts analogous to those here, and this case should not be the first. There is no genuine issue of material fact to be decided in a bench trial. The Court should grant summary judgment for Defendants.

## II.   ARGUMENT[1]

### A.   There Is No Genuine Issue of Material Fact Regarding the Prudence of the Committee's Process for Monitoring Plan Recordkeeping Fees

#### 1.   The Undisputed Evidence Establishing that Defendants Conducted Multiple Competitive RFPs and Annual Benchmarking Eliminates Any Genuine, Material Dispute as to the Prudence of Their Process

As detailed in Defendants' motion for summary judgment, ample evidence demonstrates that the Committee employed a prudent process for monitoring the Plan's recordkeeping fees, including regular competitive RFPs and annual consultant-led benchmarking.  *See* Defs.' MSJ at 12–15, DE 97.  Courts have granted summary judgment for defendants on similar facts.  *See Huang v. TriNet HR III, Inc.*, 2023 WL 3092626, at *11 (M.D. Fla. Apr. 26, 2023); *Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583, at *11 (C.D. Cal. Aug. 14, 2019); *Cryer v. Franklin Res., Inc.*, 2018 WL 6267856, at *10–11 (N.D. Cal. Nov. 16, 2018).

Those decisions—and others—belie Plaintiffs' suggestion that ERISA fiduciary breach claims are ill-suited for summary judgment.  *See also, e.g.*, *Falberg v. Goldman Sachs Grp., Inc.*, 2024 WL 619297 (2d Cir. Feb. 14, 2024) (affirming summary judgment for defendants on fiduciary breach claims); *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1 (1st Cir. 2018) (same).  And Plaintiffs' effort to avoid *TriNet*, *Marshall*, and *Cryer* by distinguishing them on the facts comes to nothing.  While there are some minor differences between the timing of the market competitions and benchmarking in *TriNet, Marshall*, and *Cryer* and the facts here, the outcome in those cases did not depend on satisfaction of any hard-and-fast rule about the frequency of RFPs or benchmarking, such that any departure precludes summary judgment.  *See TriNet*, 2023

---

[1] Defendants address relevant portions of "Plaintiffs' Responses to Defendants' Statement of Facts and Counter Statement of Facts" herein, and do not concede that any of Plaintiffs' asserted facts are undisputed or material or that the purported factual disputes they raise are genuine or material.  Defendants incorporate by reference the exhibits filed with prior submissions to the Court.  *See* DE 97-1–97-25, DE 98–98-6, DE 104-1–104-6.

WL 3092626, at *11; *Marshall*, 2019 WL 4058583, at *11; *Cryer*, 2018 WL 6267856, at *10–

11.  On the contrary, the precise timing and process details varied across those cases, illustrating

that no such fixed rules of fiduciary practice exist.  The salient point is that these decisions show

that regular competitive RFPs and benchmarking are enough to eliminate any genuine, material

dispute about prudence where, as here, there is no evidence of a flaw in the RFP processes.[2]

Tellingly, Plaintiffs cite no case declining to enter summary judgment for defendants

where, as here, the fiduciaries conducted multiple RFPs and benchmarked fees annually.  All of

Plaintiffs' cases involved at most one RFP, and in each of them, the plaintiffs also cited evidence

of flaws in the RFP or the fiduciaries' basic understanding of their oversight obligations.  *See*

*Davis v. Magna Int'l of Am., Inc.*, 2023 WL 3821807, at *7 (E.D. Mich. June 5, 2023) (RFP in

2014 and evidence that "the RFP 'was issued in a manner that resulted in a number of

recordkeepers declining to bid'"); *McCool v. AHS Mgmt. Co.*, 2023 WL 2752400, at *3 (M.D.

Tenn. Mar. 31, 2023) (RFP in 2018 and "testimony from Committee members that they lacked

familiarity with ERISA Section 408(b)(2) or its requirements"); *In Re Omnicom Grp. Inc. ERISA*

*Litig.*, 2022 WL 18674830, at *17 (S.D.N.Y Dec. 23, 2022) (RFP in 2019 and evidence that RFP

"was structured in a manner that dissuaded competitive recordkeeping fee bids").[3]

Plaintiffs also wrongly contend that the Court already held that the Committee's RFPs are

insufficient to establish a prudent process.  *See* Pls.' MSJ Opp. at 1, 14–15.  At the pleading

---

[2] Plaintiffs assert that *Cryer* "ultimately held that '[i]t is a question for a fact finder to decide
whether [an action] is prudent … ,'" Pls.' MSJ Opp. at 21 (quoting 2018 WL 6267856, at *10),
but the quoted passage comes from the court's discussion of the process for overseeing *plan*
*investments*, which are not at issue here.  In the next section, the court granted summary
judgment on the recordkeeping claim, concluding that "there is no disputed issue over the
reasonableness of the administrative committee's oversight of the plan's recordkeeping efforts
and reasonableness of fees."  *Cryer*, 2018 WL 6267856, at *10 (capitalization removed).

[3] *Feinberg v. T. Rowe Price Grp., Inc.*, 2021 WL 488631 (D. Md. Feb. 10, 2021), involved only
claims about plan investment options and did not address oversight of plan recordkeeping fees.

stage (when the motion to dismiss standard applied), the Court merely held that the RFPs *might* not rule out a finding of imprudence *if* Plaintiffs developed evidence of a flaw in the RFP process. *Moore v. Humana, Inc.*, 2022 WL 20766503, at *4 (W.D. Ky. Mar. 31, 2022) (noting Plaintiffs alleged RFP process was deficient). With discovery now closed, Plaintiffs do not have evidence sufficient to raise a genuine issue of material fact on that point. Defendants' argument is not that the mere fact of the RFPs entitles them to summary judgment; it is that Plaintiffs' lack of evidence to substantiate their allegation that the RFP processes were "deficient" eliminates any genuine issue of material fact as to prudence. Under Sixth Circuit law, the law-of-the-case doctrine does not apply in these circumstances, as the Court has never ruled on whether Plaintiffs have raised a genuine issue of material fact about whether the RFPs were flawed or Defendants' process was otherwise inadequate. *See In re B&P Baird Holdings, Inc.*, 759 F. App'x 468, 477–78 (6th Cir. 2019) (law-of-the-case-doctrine "does not apply to earlier proceedings where a different legal standard governs"); *see also, e.g.*, *Partrich v. Farber*, 2009 WL 4947913, at *8 (E.D. Mich. Dec. 14, 2009), *aff'd*, 448 F. App'x 526 (6th Cir. 2011).

## 2. There Is No Genuine Issue of Material Fact About the Committee's RFP or Benchmarking Processes

### a. Plaintiffs cannot avoid summary judgment by belatedly expanding their expert's opinions to challenge the RFPs

Plaintiffs argue that they *do* have evidence that the RFPs were flawed, claiming that their expert opined that "the record did not reflect adequate negotiations in relation to the RFPs." Pls.' MSJ Opp. at 18. Plaintiffs never disclosed any such opinion in Ms. Bray's reports, and Ms. Bray unambiguously testified that she "was not engaged to give an opinion" on the RFP processes. Ex. 4 (Bray Depo. Tr.) at 189:21–190:2, DE 97-5. That should be the end of the matter. *See* Fed. R. Civ. P. 26(a)(2)(B) (expert report must contain "complete statement of all opinions").

In any event, Ms. Bray's impermissible, out-of-scope testimony that the RFPs may not

have included "sufficient negotiations" consists only of speculation that such negotiations may not have occurred because she could not recall evidence confirming that they did. *See* Pls.' MSJ Opp. at 18–19; Ex. 4 (Bray Depo. Tr.) at 146:22–23 ("I'm not sure how the negotiations went, if there were any negotiations[.]"), 148:4–6 ("I don't have their exact, you know, what conversations happened between the third party and the recordkeepers …"), DE 97-5.  In fact, the record includes uncontroverted evidence that negotiations did take place. *See, e.g.*, Ex. 16 (2014 RFP Executive Overview) at 11, DE 97-19 (noting "Humana entered into contract negotiations with Schwab …").  And Plaintiffs have developed no evidence that *any* plan of similar size negotiated to receive the same package of services from Schwab at lower cost than the Plan.  Ms. Bray's unsupported, off-the-cuff speculation is not enough to create a genuine issue of material fact for trial. *See, e.g.*, *Boyd v. Baeppler*, 215 F.3d 594, 603 (6th Cir. 2000) ("The speculation of plaintiff's expert is not sufficient evidence to create a genuine issue of material fact."); *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 569 (6th Cir. 2006) (similar).

> **b.    Plaintiffs do not raise a genuine issue of material fact about whether the Committee conducted RFPs frequently enough**

Plaintiffs' only other criticism of the RFPs is not about the process used to conduct them, but how frequently they occurred.  Specifically, Plaintiffs argue that the Committee should have conducted RFPs at least every three years (Pls.' MSJ Opp. at 18), rather than following the three-to-five-year cadence endorsed by Plaintiff's expert Ms. Bray as a "best practice" (Ex. 2 (Bray Report) ¶ 20(k), DE 97-3).  As Plaintiffs acknowledge, ERISA "is silent on specific monitoring and bidding processes (such as RFPs and benchmarking)," Pls.' MSJ Opp. at 13, and no court has held that RFPs must occur more than every five years—or on any fixed timeline.[4]

---

[4] Plaintiffs assert that *Troudt v. Oracle Corp.* held that RFPs should occur every three years, Pls.' MSJ Opp. at 17, but the court was merely describing the plaintiffs' expert's opinion in that case.

Plaintiffs nevertheless argue that more frequent RFPs were necessary here due to merger

activity and growth in the Plan's participant count and assets. *See* Pls.' MSJ Opp. at 18. But

they fail to explain why the Plan's circumstances were so unusual as to take it out of the three-to-

five-year standard their expert labeled a "best practice." Ex. 2 (Bray Report) ¶ 20(k), DE 97-3.

The only merger that added participants from 2015 to 2019 was that of the HumanaVitality

401(k) plan, which had just 53 participants—as compared to the Plan's close to 50,000

participants. *See* Ex. 6 (2015 Form 5500) at 3, DE 97-9; Ex. 32 (Swisher Rebuttal Report) ¶ 65,

DE 104-6. Overall, the Plan had just two percent more participants at the end of 2019 than it did

at the end of 2015, and in some years in that period, the number of participants *decreased* year to

year. *See* Ex. 6 (2015 Form 5500) at 3, DE 97-9; Ex. 9 (2018 Form 5500) at 3, DE 97-12; Ex. 10

(2019 Form 5500) at 3, DE 97-13; Ex. 32 (Swisher Rebuttal Report) ¶ 65, DE 104-6.[5]

Plaintiffs assert that *Vellali v. Yale University*, 2022 WL 13684612 (D. Conn. Oct. 21,

2022), shows that the mere fact that fees decreased after an RFP creates a genuine issue of

material fact about whether the RFP should have occurred sooner, *see* Pls.' MSJ Opp. at 19, but

Plaintiffs mischaracterize that decision. In *Vellali*, the plaintiffs alleged that the fiduciaries

breached their duties because they did not perform any RFPs until 2014, and fees fell when they

solicited bids. 2022 WL 13684612, at *9–10. The plaintiffs also proffered evidence that the

"2014 RFP was deficient because, 'contrary to industry practice', [the plan] only solicited bids

from its two incumbent recordkeepers." *Id.* at *10. Here, by contrast, the $37 PPPY fee in place

---

2019 WL 1006019, at *9 (D. Colo. Mar. 1, 2019). The court did not endorse an every-three-years standard or even conclude that the opinion created a genuine issue of material fact, instead resolving the case in the defendants' favor on the separate issue of loss. *See id.*

[5] While Plan assets increased from 2015 to 2019, that was immaterial to the Plan's recordkeeping fees because Schwab received a per-participant, rather than asset-based, fee, so the increase in Plan assets did not affect Schwab's total recordkeeping fee revenue. Ex. 17 (2014 Schwab Services Agreement) at 4, DE 97-20; Ex. 32 (Swisher Rebuttal Report) ¶ 60, DE 104-6.

from 2015 to 2019 was itself set through a competitive RFP and monitored with benchmarking, and there is no genuine issue of material fact about the soundness of the Plan's RFP processes.

### c.   Nothing required the Committee's professional consultants to use the specific benchmarking criteria that Plaintiffs advocate

As further described in Defendants' summary judgment brief, the Committee did not rely solely on RFPs to control recordkeeping costs.  It also worked with outside consultants to perform annual benchmarking, and the benchmarking exercises confirmed that the Plan's fees were at the low end of the range among comparable plans.  *See* Defs.' MSJ at 8, 14.

Plaintiffs do not dispute that the benchmarking occurred or what it showed about the Plan's fees, but attempt to generate a "material question of fact" by arguing that the consultants used the wrong comparison groups because they included some plans that were somewhat smaller than the Plan.  Pls.' MSJ Opp. at 21–22.  As Plaintiffs appear to concede, every benchmarking exercise includes some smaller and larger plans (Ex. 32 (Swisher Rebuttal Report) ¶ 78, DE 104-6)—it is extremely unlikely that any two plans will have identical numbers of participants and assets—and nothing in the law compelled the use of Plaintiffs' preferred size cut-offs rather than those chosen by the Plan's consultants.[6]  Plaintiffs, moreover, have not developed evidence from which a reasonable fact-finder could conclude that using different parameters would have produced materially different results.  The mere fact that Plaintiffs' expert says she would have applied different criteria to identify comparator plans does not create a triable issue about the prudence of the Committee's process.  *See, e.g., Falberg*, 2024 WL 619297, at *3 (affirming summary judgment where argument that fiduciaries would have acted differently using different procedures was "nothing more than mere speculation"); *Birse v.*

---

[6] *Sigetich v. Kroger Co.*, 2023 WL 2431667 (S.D. Ohio Mar. 9, 2023), addresses only what is required to state an excessive-fee claim and does not support Plaintiffs' position about benchmarking as part of ongoing monitoring of fees.  *See* Defs.' MSJ Opp. at 19 n.9, DE 104.

*CenturyLink, Inc.*, 2020 WL 1062902, at *7–8 (D. Colo. Mar. 5, 2020) (granting summary

judgment where expert's fiduciary process opinions were "distinct from what ERISA requires").[7]

### d.       Plaintiffs' "continuous negotiation" rule has no basis in the law

In a final effort to avoid summary judgment, Plaintiffs argue that even RFPs combined

with annual benchmarking are not enough; the Committee had to "continuously negotiate the

Plan's fees." Pls.' MSJ Opp. at 14. As illustrated by the decisions granting summary judgment

based on RFPs and benchmarking alone (*see supra* at 3), Plaintiffs' argument grossly distorts the

continuing duty to monitor plan expenses. *Tibble*, *Hughes*, and similar cases reflect only a

general requirement that fiduciaries periodically revisit their choices to ensure that service

provider arrangements and fees remain reasonable over time. *See Hughes v. Nw. Univ.*, 63 F.4th

615, 625 (7th Cir. 2023) ("Plan fiduciaries have a continuing duty to monitor their expenses to

make sure that they are not excessive with respect to the services received."); *see also Hughes v.*

*Nw. Univ.*, 595 U.S. 170, 175–77 (2022); *Tibble v. Edison Int'l*, 575 U.S. 523, 530–31 (2015).

Plaintiffs claim that the Court "already held the continuous duty to monitor includes

negotiating for lower fees whenever possible" (Pls.' MSJ Opp. at 15), but they again misconstrue

the Court's decision. The Court held only that, taken as true (as the motion to dismiss standard

requires), Plaintiffs' allegation that the Plan's recordkeeping fees were excessive despite multiple

RFPs plausibly suggested the RFP processes might have been "deficient" in some way. *Moore*,

2022 WL 20766503, at *4. The Court did not hold that even if, after discovery, Plaintiffs could

---

[7] While the court in *Garthwait v. Eversource Energy Co.*, 2022 WL 3019633 (D. Conn. July 29, 2022), listed "the correct benchmark for recordkeeping fees" among the issues in dispute, it then cited a committee member's testimony that "neither he nor his staff ever requested written records 'regarding where Eversource's 401(k) recordkeeping fees … stacked up in comparison to other' similar [plans]," *id.* at *18—unlike here, where the Committee reviewed benchmarking reports each year. As that testimony and the surrounding context show, the court in *Garthwait* did not deny summary judgment based merely on after-the-fact second-guessing of the methodology used in professional benchmarking reports, as Plaintiffs ask the Court to do here.

not generate a genuine issue of material fact about whether there was any flaw in the RFPs, and annual benchmarking confirmed the Plan's fees compared favorably to other large plans, the Committee would be required to constantly press for ever-lower fees outside the RFPs.

There is no merit to Plaintiffs' contention that *Johnson v. Providence Health & Services*, 2018 WL 1427421 (W.D. Wash. Mar. 22, 2018), and *Troudt v. Oracle Corp.*, 2019 WL 1006019 (D. Colo. Mar. 1, 2019), show that ERISA requires annual recordkeeping fee negotiations. Pls.' MSJ Opp. at 16–17. In both cases, the plaintiffs alleged that the defendants' oversight processes were imprudent because they did not conduct RFPs—i.e., because they did not do what the Committee did here. The courts cited periodic negotiations and fee reductions to explain why the fiduciaries' approach was nonetheless prudent. *See Troudt*, 2019 WL 1006019, at *8; *Johnson*, 2018 WL 1427421, at *7–8. In other words, those decisions reflect only that fiduciaries may fulfill their duty to monitor and control plan expenses in a variety of ways. They do not hold or even suggest that annual negotiations are required on top of competitive bidding and annual benchmarking. In fact, it appears the *Troudt* fiduciaries did not renegotiate fees annually. Rather, in 2012, they negotiated a recordkeeping fee target, with any revenue-sharing above that amount to be rebated back to the plan, and the plan continued to receive credits pursuant to that same arrangement through 2017. *See Troudt*, 2019 WL 1006019, at *8.[8]

Although the specific monitoring processes employed in *Johnson* and *Troudt* differed from the Committee's approach, the end result was the same: plan recordkeeping fees fell over time. Defendants have not argued that "fee reductions indisputably prove prudence" (Pls.' MSJ Opp. at 17), but they do tend to point in that direction, as courts have repeatedly held. *See, e.g.*,

---

[8] Further, unlike here, the recordkeeper's compensation in *Johnson* was calculated as a percentage of total plan assets, a circumstance that may call for more frequent renegotiation over time to ensure that fees remain reasonable as plan assets grow. *See* 2018 WL 1427421, at *7.

*Johnson v. PNC Fin. Servs. Grp., Inc.*, 2021 WL 3417843, *4 (W.D. Pa. Aug. 3, 2021). And

contrary to Plaintiffs' suggestion (Pls.' MSJ Opp. at 17), ERISA does not require plans to secure

rock-bottom fees. As the Department of Labor has advised, "[f]ees are just one of several factors

fiduciaries need to consider in deciding on service providers," U.S. Dep't of Labor, *Meeting*

*Your Fiduciary Responsibilities* at 6 (2021), https://bit.ly/3kh7LB3, and the "level and quality of

service" also appropriately influence decisions about plan service arrangements, U.S. Dep't of

Labor, *Understanding Retirement Plan Fees and Expenses* at 9–10 (Dec. 2011), bit.ly/3PRgiLY.

ERISA simply requires that fiduciaries ensure that their plans do not incur fees that are excessive

relative to the services provided. *See, e.g.*, *CommonSpirit*, 37 F.4th at 1169. The Committee

fully discharged that duty through regular RFPs and annual benchmarking, among other actions.

### e.   The modest increase in recordkeeping fees in 2021 does not raise a genuine issue of material fact regarding prudence

Plaintiffs further argue that the Committee breached its duties by permitting a modest

increase in recordkeeping fees (from $23 PPPY to $28 PPPY) in February 2021—an increase

that Plaintiffs do not dispute was more than offset by a simultaneous reduction in investment-

management fees, resulting in net savings for participants. *See* Pls.' MSJ Opp. at 18; *see also*

Defs.' MSJ at 7 (discussing change in target date fund offering and associated decrease in fees).

Plaintiffs' criticism rests entirely on Ms. Bray's unsupported speculation that it is possible the

Committee could have avoided the recordkeeping fee increase, and secured even greater overall

net savings, if it had just negotiated harder with Schwab. Pls.' MSJ Opp. at 18. But the $28

PPPY rate was the product of an *additional* competitive bidding process for target date funds

conducted less than six months before that fee went into effect. *See* Ex. 21 (Sept. 15, 2020

Comm. Pres.) at 44, DE 97-24. Ms. Bray's baseless assertion that a still-lower rate might have

been available does not create a genuine issue of material fact. *See supra* at 6 (citing cases).

**B.**     **Defendants Are Separately Entitled to Summary Judgment Because No Reasonable Fact-Finder Could Conclude the Plan's Fees Were Excessive Relative to the Services Rendered**

Plaintiffs' opposition also confirms that they have not raised a genuine issue of material fact about whether the Plan's recordkeeping fees were "excessive relative to the services rendered," *CommonSpirit*, 37 F.4th at 1169—an independent element of their claim.  Plaintiffs argue that there is a genuine, material fact dispute because their expert opines that the Plan's fees were too high and the Court purportedly already ruled that the reduction in fees after the 2019 RFP shows that the Plan was paying too much before.  Plaintiffs are wrong twice over.

To start, Plaintiffs argue that Ms. Bray's "reasonable fee range" of $12 to $20 PPPY "provides estimates for fees achievable throughout the Class Period" based on her "extensive experience and awareness that other, similarly situated plans paid $12 per participant in 2015." Pls.' MSJ Opp. at 12.  That is precisely the type of unsupported assertion that courts have repeatedly held does not establish that a plan's fees were "excessive."  *See, e.g.*, *TriNet*, 2023 WL 3092626, at *12; *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1138–41 (D. Colo. 2019).

While Plaintiffs vaguely allude to Ms. Bray's "experience" and "awareness" of unspecified other plans, Ms. Bray has never identified *any specific plan* that paid $12 to $20 per participant in 2015.  *See* Ex. 4 (Bray Depo. Tr.) at 175:16–177:11, DE 97-5.  Even setting aside all of the other issues with the plans identified in Ms. Bray's report that she claims paid fees "in line" with her $12 to $20 PPPY range, Ms. Bray looked at those plans' fees only from 2020 to 2022. Ex. 2 (Bray Report) ¶ 29, DE 97-3; Ex. 4 (Bray Depo. Tr.) at 176:11–14, DE 97-5.  She did not analyze the fees paid by any plan other than the Plan in 2015 to 2019, despite claiming that the Plan should have been paying $12 to $20 PPPY throughout the Class Period.  And Ms. Bray agreed that recordkeeping fees were generally decreasing in the relevant period (Ex. 2 (Bray Report) ¶ 28, DE 97-3), such that reliance on fees from 2020–2022 to show what was

12

reasonable in 2015–2019 is illogical on its face.  *See Mateya v. Cook Grp. Inc.*, 2023 WL 4608536, at *8 (S.D. Ind. June 16, 2023); *see also, e.g.*, Ex. 32 (Swisher Rebuttal Report) ¶ 24 (Table 1) (calculating that, using Ms. Bray's methodology, the "Cargill Plan" she says paid $15 PPPY in 2022 would have paid $68–$82 PPPY in 2015–2019), DE 104-6.[9]

Even as to the 2020–2022 period—which Plaintiffs largely ignore in attempting to come up with a process critique—the fees paid by the other plans Ms. Bray cites cannot support a finding that the Plan's recordkeeping fees were excessive, because there is insufficient evidence that the services obtained for those fees were comparable to those the Plan received from Schwab.  Ms. Bray conceded that she did not do "any analysis to verify whether the services that were actually contracted for by these plans were similar to the services that Humana contracted for in its own recordkeeping arrangement."  Ex. 4 (Bray Depo. Tr.) at 163:24–164:4, DE 97-5.

Plaintiffs scramble to try to fill that crucial gap in Ms. Bray's opinions, but they do not succeed.  Plaintiffs first assert that Ms. Bray "'confirmed the recordkeeping fee service codes' in her comparator plans were comparable to the Plan's services."  Pls.' MSJ Opp. at 12 (citing Bray Depo. Tr. at 161:19–163:23).  However, the cited service codes, pulled from plan Form 5500 filings with the Department of Labor, indicate only general categories of services or compensation—for example, "recordkeeping fees."  *See* U.S. Dep't of Labor, *2021 Instructions for Form 5500* at 29, https://bit.ly/3SGrafM.  They provide no insight about the details of the service arrangements or the quality of service provided—information essential to any meaningful comparison.  *See, e.g.*, *Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108, at *4, *7 (W.D. Pa.

---

[9] The *Moitoso* stipulation cited in Ms. Bray's report does not help.  Ms. Bray does not purport to have any direct experience with that plan, and she did nothing to analyze the services it received. *See* Ex. 4 (Bray Depo. Tr.) at 159:15–20, DE 97-5.  Moreover, courts have repeatedly rejected that stipulation, entered to resolve a discovery dispute in other litigation, as an inapt comparator for evaluating other plans' fees.  *See* Defs.' MSJ Opp. at 25 (collecting cases), DE 104.

Aug. 18, 2022) (dismissing claim and noting that comparing Form 5500 service codes did not account for "the quality of services"), *appeal filed*, No. 22-2552 (3d Cir. Aug. 23, 2022).[10]

Plaintiffs' assertion that Ms. Bray "reviews services agreements every week" (Pls.' MSJ Opp. at 12) does not help them, either.  Ms. Bray admitted that she did not review the service agreements for any of the specific plans for which she purported to calculate fees, which are the plans that matter.  Ex. 4 (Bray Depo. Tr.) at 162:8–23, DE 97-5.  Similarly, even if the Plan did not require "unique" services (Pls.' MSJ Opp. at 23)—which is not what Humana's 30(b)(6) witness said (Ex. 29 (Klein Depo. Tr.) at 55:22–56:11, DE 104-2)—that would not mean that the Plan received exactly the same level and scope of services as every other large retirement plan.

The only concrete evidence in the record on this point shows that the Plan's services were *not* the same as those all other large plans received:  The annual benchmarking reports reflect that the Plan received a higher level of services than comparable plans despite paying lower fees. *See* Exs. 22–28 (2015–2021 Benchmarking Reports), DE 98–98-6.[11]  Particularly in light of this evidence, Plaintiffs and their expert cannot rely on bare assertions that all plans receive the same services to avoid any further analysis when comparing fees across plans.  This case is not at the pleading stage anymore; Plaintiffs need facts to support that assertion, and they have none.[12]

---

[10] There are several other serious problems with Ms. Bray's use of Form 5500s to calculate fees for other plans, including the fact that Form 5500s do not capture any fees paid directly by the plan sponsor, as Ms. Bray admits was the case for the BlackRock Retirement Savings Plan cited in her report.  *See* Ex. 2 (Bray Report) ¶ 29, DE 97-3; *see also* Ex. 32 (Swisher Rebuttal Report) ¶¶ 18–26, 31–47, DE 104-6.

[11] For example, Schwab offered Plan participants access to third-party investment advice tools at no additional cost, Ex. 24 (2017 Benchmarking Report) at 9, DE 98-2, recordkept participants' investments in the Plan's self-directed brokerage window and company stock fund, administered the Plan's auto-increase feature, and provided more group and one-on-one meetings for participant education than is standard, *see* Ex. 26 (2019 Benchmark Report) at 16, DE 98-4.

[12] The Seventh Circuit's decision in *Hughes*, which held only that the plaintiffs there had sufficiently *alleged* that "recordkeeping services are fungible and that the market for them is highly competitive," 63 F.4th at 632, is therefore beside the point.  *See* Pls.' MSJ Opp. at 23–24.

Plaintiffs also incorrectly argue that the Court's dismissal-stage decisions establish that the reduction in fees through the 2019 RFP alone is enough to show the Plan's fees were excessive in prior years. *See* Pls.' MSJ Opp. at 23. But the Court merely allowed for the *possibility* that Plaintiffs might be able to develop evidence that the Plan's fees were too high at some point between 2015 and 2019 in light of the decrease in 2019. *See Moore v. Humana, Inc.*, 2022 WL 20766504, at *2–3 (W.D. Ky. Dec. 2, 2022). Plaintiffs, however, have not developed evidence sufficient to create a genuine issue of material fact on that issue. Ms. Bray's opinions are not enough to do so—as explained, Ms. Bray did not analyze fees for any other plan before 2020, despite agreeing that fees trended down over time. *See supra* at 12–13.

Rather than supporting Plaintiffs' theory, the evidence developed in discovery shows that the Plan's fees were not excessive at any point, whether between 2015 and 2019 or otherwise. The Committee monitored recordkeeping fees through annual benchmarking exercises that showed the Plan's fees compared favorably against other large plans—facts not alleged in the First Amended Complaint and thus not accounted for in the Court's earlier ruling that the 2019 fee decrease potentially *could* be a sign that fees were too high beforehand. Moreover, objective industry survey data also corroborates the reasonableness of the Plan's fees from 2015 to 2019. Ex. 5 (Swisher Report) ¶¶ 124–125 (citing NEPC surveys), DE 97-7. It cannot be, as Plaintiffs imply, that any decrease in fees raises a genuine issue of material fact about whether the previous arrangement was unreasonable. Such a rule would put fiduciaries in an impossible position, exposed to liability every time they secured better pricing for their plans. That is not the law.

## III.   CONCLUSION

The Court should grant Defendants' Motion for Summary Judgment, DE 97.[13]

---

[13] Defendants are entitled to summary judgment on all of Plaintiffs' claims, as Plaintiffs concede that their derivative claim for failure to monitor cannot survive on its own. Pls.' MSJ Opp. at 25.

Dated: February 20, 2024

Respectfully submitted,

*/s/ Catalina Vergara*
Catalina Vergara (*pro hac vice*)
Noah Ickowitz (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407
cvergara@omm.com
nickowitz@omm.com

Brian D. Boyle (*pro hac vice*)
Deanna M. Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone: 202-383-5300
Facsimile: 202-383-5414
bboyle@omm.com
derice@omm.com

Michael P. Abate
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: 502-416-1630
Facsimile: 502-540-8282
mabate@kaplanjohnsonlaw.com

*Attorneys for Defendants Humana Inc. and the Humana Retirement Plans Committee*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 20, 2024, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.


*/s/ Catalina Vergara*
*Counsel for Defendants*