**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**

KENA MOORE, TIMOTHY K. SWEENEY, )
RUSSEL A. HOHMAN, SUSAN M. SMITH )
and  VERONICA  CARGILL,  individually )
and on behalf of all others similarly situated, )
                                                                    )
                                    Plaintiffs,          )
                                                                    )
                    v.                                          )
                                                                    )
HUMANA  INC.,  THE  BOARD  OF )
DIRECTORS  OF  HUMANA  INC.,  THE )
HUMANA     RETIREMENT     PLANS )
COMMITTEE and JOHN DOES 1-30.     )
                                                                    )
                                    Defendants.       )
                                                                    )

**CIVIL ACTION NO.:**
3:21-cv-00232-RGJ

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................... 1

II.    DEFENDANTS' PROCESSES ARE INDISPUTABLY IMPRUDENT ........................ 3

    A     Defendants' failure to negotiate is a breach of the duty of prudence ................... 3

    B.    Defendants' RFP processes were deficient ........................................................... 5

    C.    Non-Fiduciary, third-party advisors do not bar liability ....................................... 7

III.   THE PLAN'S SERVICES DID NOT JUSTIFY FEES ................................................. 10

    A.    *CommonSpirit* did not compare that plan to itself, unlike here ........................ 12

    B.    Bray's real world example plans are comparable to the Plan. ............................ 12

IV.   CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Armstrong v. Lasalle Bank Nat. Ass'n*,
446 F.3d 728 (7th Cir. 2006) ...................................................... 8

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822 (2003)...................................................................... 2

*Brown v. MITRE Corp.*,
2023 WL 2383772 (D. Mass. Mar. 6, 2023)................................ 12

*Cryer v. Franklin Res., Inc.*,
2018 WL 6267856 (N.D. Cal. Nov. 16, 2018) ............................ 6

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982)........................................................ 8

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) .................................................... 8

*Donovan v. Mazzola,*
716 F.2d 1226, 1231 (9th Cir.1983)
*cert. denied sub nom Mazzola v. Donovan,* 464 U.S. 1040, (1984) ............... 3

*Fifth Third Bancorp v. Dudenhoeffer*
573 U.S. 409 (2014)..................................................................... 1

*Fritton v. Taylor Corp,*
2022 WL 17584416 (D. Minn. Dec. 12, 2022)............................ 14

*Garcia v. Alticor, Inc.*,
2022 WL 19919753 (W.D. Mich. Aug. 23, 2022)........................ 13

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
629 F. Supp. 3d 352, 365 (M.D.N.C. 2022) ............................... 14

*George v. Kraft Foods*,
641 F.3d 786 (N.D. Ill. 2010) ............................................. 7, 8, 9

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996) .................................................... 8

*Huang v. TriNet HR III, Inc.*,
2023 WL 3092626 (M.D. Fla. Apr. 26, 2023)...................... 4, 6, 13

*Hughes v. Nw. Univ.*,
142 S. Ct. 737 (2022) ................................................................................... 3

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) ...................................................................... 13

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
2021 WL 3417843 (W.D. Pa. Aug. 3, 2021) ............................................... 5

*Jones v. DISH Network Corp.*,
2023 WL 7458377 (D. Colo. Nov. 6, 2023)
*report and recommendation adopted*,
2023 WL 8170913 (D. Colo. Nov. 24, 2023) ........................................... 2, 9

*Lanka v. O'Higgins*,
810 F. Supp. 379 (N.D.N.Y. 1992) ............................................................. 3

*Marshall v. Northrop Grumman Corp.*,
2019 WL 4058583, *10 (C.D. Cal. Aug. 14, 2019) ..................................... 6

*Mateya v. Cook,*
WL 4608536 (S.D. Ind. June 16, 2023) .................................................... 14

*Mator v. Wesco Distrib., Inc.*,
2022 WL 3566108 (W.D. Pa. Aug. 18, 2022) ....................................... 13, 14

*McDonald v. Lab'y Corp. of Am. Holdings*,
2023 WL 4850693 (M.D.N.C. July 28, 2023) ........................................... 15

*Miller v. Packaging Corp. of Am., Inc.*
 2023 WL 2705818, at *6 (S.D. Mich. Mar. 30, 2023) ............................... 14

*Moitoso v. FMR LLC,*
451 F. Supp. 3d 189 (D. Mass. 2020) ......................................... 11, 14, 15

*Moore v. Humana, Inc.*,
2022 WL 20766503 (W.D. Ky. Mar. 31, 2022),
*reconsideration denied*, 2022 WL 20766504 (W.D. Ky. Dec. 2, 2022) ("*Moore I*") ............... 3, 5

*Moore v. Humana, Inc.,*
2022 WL 20766504 (W.D. Ky. Dec. 2, 2022) ("Moore II") .................... 10, 12, 14

*In Re Omnicom Group Inc. ERISA Litigation*,
2022 WL 18674830 (S.D.N.Y. Aug. 2, 2021) ........................................... 10

*Pfeil v. State St. Bank & Tr. Co.*,
806 F.3d 377 (6th Cir. 2015) ................................................................... 1, 2

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41, 56 (1987) ............................................................................................. 2

*Ramos v. Banner Health*,
1 F.4th 769 (10th Cir. 2021) ................................................................................... 15

*Rodriguez v. Hy-Vee, Inc.*,
2022 WL 16648825 (S.D. Iowa Oct. 21, 2022) ....................................................... 14

*Sacerdote v. N.Y. Univ.*,
328 F. Supp. 3d 273 (S.D.N.Y. 2018) ....................................................................... 2

*Seibert v. Nokia of Am. Corp.*,
2023 WL 5035026 (D.N.J. Aug. 8, 2023) ..................................................... 12, 13, 14

*Sigetich v. Kroger Co.*,
2023 WL 2431667 (S.D. Ohio Mar. 9, 2023) ....................................................... 13, 14

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ................................................... 10, 11, 12, 13

*Smith v. Robbins & Myers, Inc.*,
969 F. Supp. 2d 850 (S.D. Ohio 2013) ....................................................................... 3

*Teodosio v. DaVita, Inc.*,
2023 WL 4761621 (D. Colo, July 26, 2023) ............................................................. 14

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015) ................................................................................................... 4

*Troudt v. Oracle Corp.*
2019 WL 1006019 (D. Colo. Mar. 1, 2019) .......................................................... 5, 6

*Tussey v. Abb, Inc.*,
746 F.3d 327 (8th Cir. 2014) .................................................................................. 2, 10

*In re Unisys Corp. Sav. Plan Litig.*,
74 F.3d 420 (3d Cir.1996) ......................................................................................... 8

*United States v. Robinson*,
2016 WL 7030447 (E.D. Ky. July 8, 2016),
*aff'd*, 705 F. App'x 458 (6th Cir. 2017) .................................................................... 15

*Vellali v. Yale Univ.*,
2022 WL 13684612 (D. Conn. Oct. 21, 2022) ......................................................... 14

*Wehner v. Genentech, Inc.*,
2021 WL 507599 (N.D. Cal. Feb. 9, 2021) .............................................................. 14

*White v. Chevron Corp.*,
2016 WL 4502808 (N.D. Cal. Aug. 29, 2016)...........................................................................6, 7

**Statutes**

29 U.S.C. § 1001 ..........................................................................................................................4

29 U.S.C. § 1104(a)(1)(A) ...........................................................................................................21

## I.  <u>INTRODUCTION</u>

Plaintiffs agree with Defendants that ERISA mandates "that a fiduciary "engage[] in a reasoned decision[-]making process, consistent with that of a 'prudent man acting in [a] like capacity.'"  Defs. Mem. at *2 (quoting *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384–85 (6th Cir. 2015)). That is the extent of their agreement because Defendants misapply the law and conveniently omit that ERISA also states that "the content of the duty of prudence turns on the circumstances ... prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Pfeil*, 806 F.3d at 385.(quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). Here, Defendants breached their duty to act prudently under the prevailing circumstances of the Plan, fiduciary standards, and the marketplace.

Defendants' arguments rest on several legal flaws and factual distortions. First, contrary to Defendants' arguments, Plaintiffs do not "suggest that prudence boils down to following a checklist of 'best practices,'" as a matter of law. Defs. Mem. at 11. Plaintiffs provide a bounty of proof that Defendants breached their duty of prudence by failing to adhere to the fiduciary standard of care based on industry standards and the *context of this case*. The evidence and caselaw here, including Defendants' own expert and citations, proves that the industry standard is to renegotiate fees annually; recordkeeping fees in the marketplace were declining while the Plan's fees remained the same; the Plan had multiple sources of unwielded bargaining power, such as its growing size and its multifaceted relationship with Schwab; all mega-plans in the marketplace obtain the same basic services as the Plan (especially plans with lower fees); and the Plan's circumstances necessitated an RFP occur much sooner than 2019. Despite these circumstances, and the Plan's unreasonably high fees, Defendants failed to even *attempt* to negotiate lower fees for the Plan.

Defendants repeatedly argue, incorrectly, that they are not imprudent for failing to employ industry standard practices simply because ERISA is silent on specific practices, such as

negotiations and bidding frequency. Defs. Mem. at 3, 14-15, 17. However, ERISA does not provide _any_ specific monitoring practices pertaining to the duty of "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).[1] Although ERISA does not explicitly mandate specific monitoring processes, many courts have found fiduciaries acted imprudently for failing to conduct practices if it is what a prudent fiduciary would have done under "the circumstances then prevailing." *Tussey v. Abb, Inc*., 746 F.3d 327, 335 (8th Cir. 2014); *see e.g. Id.* at 336 (although ERISA does not mention negotiations, the Eighth Circuit affirmed the lower court's finding that the defendants imprudently failed to "adequately leverage the Plan's size to reduce fees"); *Sacerdote v. N.Y. Univ*., 328 F. Supp. 3d 273, 286 (S.D.N.Y. 2018) (although "competitive bidding is not *per se* required under ERISA", courts have found failure to conduct RFPs in a timely manner demonstrates imprudence); *Jones v. DISH Network Corp.*, 2023 WL 7458377, at *8 (D. Colo. Nov. 6, 2023), *report and recommendation adopted*, 2023 WL 8170913 (D. Colo. Nov. 24, 2023) (although ERISA does not mandate guiding documents, the misuse of one "is at least relevant to a fiduciary duty analysis.") Thus, as a matter of law, the Court may find that Defendants have breached their duty of prudence to "monitor Plan recordkeeping costs based on the [Plan] fiduciaries' ___specific failings in this case___." *Tussey*, 746 F.3d at 266 (emphasis added).

Defendants' third flawed premise is that ERISA creates "broad leeway afforded to fiduciaries under the law." Defs. Mem. at 2. Yet, Defendants offer no support for their argument, nor could they because "the Supreme Court has 'abrogated the 'presumption of prudence' doctrine altogether." *Pfeil*, 806 F.3d at 381 (citing *Bancorp*, 573 U.S. at 425); *see also Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014) ("We consider whether, when an ESOP fiduciary's

---

[1] Indeed, "Congress 'expect[ed]' courts would develop 'a federal common law of rights and obligations under ERISA-regulated plans.'" *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)).

decision to buy or hold the employer's stock is challenged in court, the fiduciary is entitled to a defense-friendly standard that the lower courts have called a 'presumption of prudence'…We hold that no such presumption applies. Instead, ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets."); *Lanka v. O'Higgins*, 810 F. Supp. 379, 387 (N.D.N.Y. 1992) ("It is not a business judgment rule that applies to the question of prudence in the management of an ERISA plan, but rather a prudent person standard.") (quoting *Donovan v. Mazzola,* 716 F.2d 1226, 1231 (9th Cir.1983), *cert. denied sub nom., Mazzola v. Donovan,* 464 U.S. 1040, (1984)); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 867 (S.D. Ohio 2013) (similar). Defendants' specific failings indisputably prove they breached their duty of prudence owed to the Plan and participants. Thus, summary judgment should be granted.

## II. <u>DEFENDANTS' PROCESSES ARE INDISPUTABLY IMPRUDENT</u>

Defendants argue that because they hired third-party consultants to conduct RFPs and benchmarking, "no reasonable factfinder could find that the Committee breached its fiduciary duties." Defs. Mem. at 2. However, this Court has already found Defendants' RFP arguments, including the belated fee reduction, unavailing. *See Moore v. Humana, Inc.*, 2022 WL 20766503, at *4 (W.D. Ky. Mar. 31, 2022), *reconsideration denied*, 2022 WL 20766504 (W.D. Ky. Dec. 2, 2022) ("*Moore I*"). Plaintiffs' Complaint alleges that "Defendants' RFP 'process was clearly deficient'" because the Plan paid above reasonable fees, the size of a plan determines recordkeeping fees, and Defendants failed to negotiate lower, obtainable fees for the Plan. *Id*. This Court held that, "[t]hese allegations are enough to survive a motion to dismiss because, if true, they could establish that the Committee failed to act as a prudent fiduciary." *Id*. (citing *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022)). Indeed, discovery confirms Plaintiffs' allegations are true.

### A. **Defendants' failure to negotiate is a breach of the duty of prudence.**

Defendants concede they did not attempt to negotiate recordkeeping fees by leveraging the Plan's size, or Humana's multifaceted, long term relationship with Schwab. *See* Klein Dep. 87: 8-18; 56:12-22. Importantly, Defendants' expert, Peter Swisher ("Swisher"), admitted that there was no evidence that Defendants attempted to negotiate lower fees during this time period. Swisher Dep. 157:10-24. Simply put, Defendants are wrong to state "there is no evidence that the Committee failed to evaluate these factors or any others." Defs. Mem. at 17. Other circumstances that are undisputed by both parties' experts prove the Plan had unwielded negotiation leverage. Swisher testified that "recordkeeping fees attributed to recordkeeping was -- was falling" during the Class Period. Swisher Dep. at 140:22-24; *see also* Bray Rep. ¶ 28. Both experts agree that larger plans will have lower fees. *See* Swisher Dep. at 134:18-20; Bray Rep. ¶¶ 13, 22, 43. Additionally, Swisher repeatedly testified that "it's been my experience that there is usually a lower fee available if you make that your focus." Swisher Dep. at 153:6-12; *see also, Id*. at 160:1-9; Bray Rep. ¶46.

Defendants argue the Supreme Court's holding in *Tibble v. Edison Int'l,* 575 U.S. 523 (2015) does not require "fiduciaries to renegotiate fees on any timetable whatsoever" only "that fiduciaries cannot simply 'set it and forget it.'" Defs. Mem. at 16. Although the law does not specify a "timetable", it does mandate that fiduciaries act with "diligence under the circumstances." 29 U.S.C. § 1001 *et seq*. Ultimately, here, diligence under these circumstances required negotiating lower fees. Thus, by not even *attempting* to negotiate fee reductions under these circumstances, Defendants did in fact, "set it and forget it." Defs. Mem. at 16.

Defendants' own case law proves the prevailing circumstances require fiduciaries to renegotiate fees annually, on top of RFPs. Defs. Mem. at 12-13. For example, the fiduciaries in *Huang v. TriNet HR III, Inc*., "negotiated a further price reduction before retaining [the

recordkeeper's] services" after an RFP, conducted competitive bidding three times in six years, and obtained favorable relationship pricing by consolidating recordkeeping services for two plans. 2023 WL 3092626, at **1- 2 (M.D. Fla. Apr. 26, 2023). Meaning, the fiduciaries in *TriNet* successfully wielded the exact leverage Defendants failed to wield. *Troudt v. Oracle Corp*. also proves Plaintiffs' point because those fiduciaries <u>sought and obtained fee reductions each year</u> between 2011 and 2017, unlike Defendants. 2019 WL 1006019, at *8 (D. Colo. Mar. 1, 2019). Lastly, *Johnson v. PNC Fin. Servs. Grp., Inc*., actually held that "a high fee may reflect imprudence even if the fee falls year-over-year." 2021 WL 3417843, *4 (W.D. Pa. Aug. 3, 2021). Here the fees did not fall year after year, or at all for five straight years. Defendants' cases repeatedly show that, under the prevailing circumstances, prudent fiduciaries seek fee reductions annually.

In any event, this Court has already held that RFPs alone are not sufficient to prove prudent processes if further negotiations and fee reductions could have occurred. *Moore I*, 2022 WL 20766503, at *4. Unfortunately for the Plan and participants, Defendants breached their fiduciary duties by repeatedly failing to leverage the Plan's bargaining power to lower fees.

**B.      Defendants' RFP processes were deficient.**

Defendants attempt to characterize the belated RFPs as a "process that guaranteed the Plan paid a reasonable market price for recordkeeping services." Defs. Mem. at 12. They were not. Bray criticized the RFPs for being under negotiated, untimely, and failing to account for how the Plan's size influenced negotiable fees. *See* Bray Dep.146:3-148:14; Bray Rpt. ¶ 47. Hence, Defendants wrongly mischaracterized Bray's testimony as finding no fault in Defendants' RFP processes. Defs. Mem. at 2-3. Plus, Klein's testimony supports Bray's findings. Klein Dep. 56:12-22.

 Bray opined that under the circumstances of this Plan, an RFP should happen every three years, (rather than other plan circumstances that could allow for up to five years in between RFPs).

Bray testified her best practices are not "plan-specific" and mega plans, like the Plan, "should do it more frequently because of the buying power that they have as their assets increase and participant counts increase, especially in the healthcare industry with mergers and acquisitions." Bray Dep. 117: 2-10. Defendants' cases support Bray's opinions. First, Defendants point to *Troudt*, (Defs. Mem. at 12) where the court actually held, "prudent fiduciaries typically solicit such 'request for proposals' ('RFPs') from vendors ***at least once every three years***." 2019 WL 1006019, at *9 (D. Colo. Mar. 1, 2019) (emphasis added). Defendants again point to *TriNet* where the fiduciaries conducted more frequent competitive bids and included follow up negotiations, unlike Defendants here. 2023 WL 3092626, at **1- 2. Likewise, the fiduciaries in *Marshall v. Northrop Grumman Corp*., conducted two RFPs in four years, with another fee negotiation in the middle. 2019 WL 4058583, *10 (C.D. Cal. Aug. 14, 2019). *Cryer v. Franklin Res., Inc.,* is inapposite because there the defendants' motion for partial summary judgment was granted due to the plaintiffs' complete failure to provide *any* evidence that the fees were "not reasonable and not comparable to similar plans", although they provided evidence of imprudent processes. 2018 WL 6267856, at *11 (N.D. Cal. Nov. 16, 2018). Here, Plaintiffs provide evidence of imprudent processes and the unreasonableness of fees compared to similar plans and the Plan itself.

Lastly, Defendants artfully snip the out-of-circuit motion to dismiss decision in *White v. Chevron Corp.*, noting ERISA's silence on RFPs. Defs. Mem. at 17 (quoting 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016)). Yet the court's full discussion on bidding actually agreed with the summary judgment decision by the Seventh Circuit in *George v. Kraft Foods Glob., Inc*., 641 F.3d 786, 798-99 (7th Cir. 2011), holding that the failure to conduct competitive bidding can indicate imprudence where, like here, plaintiffs provide evidence that "the plan fiduciaries had not renegotiated their recordkeeping arrangement" within a reasonable timeframe. *White*, 2016 WL

4502808, at *14. Unlike Bray's report and testimony, the plaintiffs in *Chevron* did "not even allege that a competitive bid would have benefitted the Plan." *Id.* at *14. Thus, this case is more like *Kraft Foods*, where the court denied Defendants' motion for summary judgment because the plaintiffs' expert provided proof that fiduciaries conduct RFPs "about once every three years" on top of benchmarking. *Kraft Foods*, 641 F.3d 786 at 798-99.

Finally, Defendants make much of the 2014 and 2019 RPF results themselves. Again, the RFPs' untimeliness and unnegotiated bids means the results should not have been relied on to determine the Plan's fees were reasonable, especially for five years. Furthermore, Defendants admit that Schwab was not the lowest bidder (Defs. Mem. at 12), and the 2014 RFP Executive Overview cited by Defendants reveals that Schwab did not have the highest "Sponsor Satisfaction Score", and there were two bidders with lower fees. Humana-Moore006136@Humana-Moore006141. The 2019 RFP Executive Summary cited by Defendants shows all bidders offered an annual cost savings from Schwab's then current pricing, and all of the bidders offered seven of the same basic services, and two bidders included free incoming plan mergers whereas Schwab charged a fee. Humana-Moore006169—73. Therefore, Defendants had reason to know there was viable competition in the marketplace offering the same services, yet Defendants failed to investigate the market for five years. In sum, the untimely and unnegotiated RFP responses were not reliable enough to ensure the Plan's recordkeeping fees "were objectively reasonable" for five years without any intermittent negotiations. Defs. Mem. at 4.

### C.   Non-Fiduciary, third-party advisors do not bar liability.

Defendants argue the annual benchmarking reports provided by outside consultants sufficed to "ensure the fees remained in line with market rates in between RFPs." Defs. Mem. at 2. Although Bray agrees that benchmarking can be a "helpful tool" (Defs. Mem. at 10), Bray

disagreed that benchmarking is a sufficient substitute for negotiations and RFPs. Worse yet, this benchmarking was clearly flawed. Consequently, Defendants' arguments fail as a matter of law and fact. Legally, "soliciting outside advice 'does not operate as a 'complete whitewash' which, without more, satisfies ERISA's prudence requirement." *Kraft Foods*, 641 F.3d at 799-0 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982))*; see also Donovan v. Cunningham*, 716 F.2d 1455, 1474 (5th Cir. 1983) (similar); *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996) (similar). Fiduciaries must themselves "review the data a consultant gathers, to assess its significance and to supplement it where necessary." *In re Unisys Corp. Sav. Plan Litig.*, 74 F.3d 420, at 435 (3d Cir.1996). Furthermore, "the thoroughness of a fiduciary's investigation is measured not only by the actions it took in performing it, but by the facts that an adequate evaluation would have uncovered." *Id*. at 436.

Had Defendants adequately investigated the benchmarking they would have seen the Plan's fees remain the same while the market was experiencing a decline. Failure to recognize the changing marketplace is a breach because, "[a] trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent." *Armstrong v. Lasalle Bank Nat. Ass'n*, 446 F.3d 728, 733-34 (7th Cir. 2006). Defendants do not explain their bald assertion that Plaintiffs' evidence of these flaws is "simply a restatement of Plaintiffs'" negotiation arguments, and not evidence of imprudence. Defendants also failed to recognize the Plan was being compared to categorically smaller plans with less bargaining power. Strangely, Defendants prove Plaintiffs' point by stating that Swisher opines the benchmarking's broad comparator plan size thresholds are used to "signify large plans that can leverage their size to obtain competitive fees." Defs. Mem. at 19; *see also* Bray Rep. ¶ 50 (when compared to smaller plans that cannot achieve lower fees, "the Plan's fees will always be below the median.") In other words, the Plan

only appears to have below median fees because it is put next to plans with less bargaining power. This case is nearly identical to the case in *Kraft Foods*, where the court held that the defendants' "failure to solicit periodic bids" was a breach of fiduciary duty and hiring "several independent consultants for advice as to the reasonableness of Hewitt's fee[s]" did not suffice as prudent monitoring processes. *Kraft Foods*, 641 F.3d 786 at 798-99.

Although Swisher thinks these smaller comparators are "appropriate" (Defs. Mem. at 19), the report itself warned, "Plan Sponsors should proceed with caution where benchmarking is concerned. The ranges of benchmarks (i.e. low, median, and high) when applied to any given plan size are not pure with respect to structure of each service category." *See* Examination and Opinion of the Reasonableness of Vendors' Arrangements and Fees – 2016, created and presented by Roland Criss, dated January 11, 2017. Humana-Moore001780@001784 (exhibit to Def.' motion for summary judgment). The court in *Kraft Foods* held benchmarking was insufficient to prove prudence because the plan was warned, "'without an actual fee quote comparison' - i.e., a bid from another service provider - it 'could not comment on the competitiveness of [Hewitt's] fee amount for the services provided.'" *Id*. at 800. Similarly, here, Roland Criss cautioned against relying on the benchmarks that did not provide details about services and fees.

Finally, like properly executed benchmarking, Bray opines Fee Policy Statements (FPSs) are an industry standard for guiding fiduciaries' fee monitoring processes. Bray Rep., ¶¶ 42-44. Defendants argue that "there is no authority that requires plan fiduciaries to adopt an FPS." Defs. Mem. at 3. While courts have not had the occasion to rule on FPSs, they have ruled analogous investment guiding documents, which ERISA is also silent on. Courts have held commonly used guiding documents are "at least relevant to a fiduciary duty analysis" in fiduciary breach of prudence claims pertaining to 401(k)s. *Jones,* 2023 WL 7458377, at *8  (D. Colo. Nov. 6, 2023);

*see also, In Re Omnicom Group Inc. ERISA Litigation*, 2022 WL 18674830, at *16 (S.D.N.Y. Aug. 2, 2021). Similarly, Plaintiffs have proffered evidence that while ERISA does not mandate implementing an FPS, Bray's expert opinion demonstrates FPSs are what "a prudent man acting in a like capacity" would use. *Tussey*, 746 at 335. Even when properly implemented, FPSs and benchmarking do not satisfy the fiduciary duty of prudence to monitor plan fees. Defendants cannot justify their untimely RFPs or total failure to even attempt to negotiate the Plan's fees by relying on flawed benchmarking alone.

### III. THE PLAN'S SERVICES DID NOT JUSTIFY FEES

Contrary to Defendants' repeated mischaracterization of Bray's opinion and testimony, Plaintiffs account for the services obtained by the Plan and comparator Plans when demonstrating the Plan's fees were unreasonable. Defendants rely on the motion to dismiss holding in *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022) to support their argument that Plaintiffs have not shown any indisputable material facts by not analyzing how "the Plan's fees were 'excessive relative to the services rendered' by the Plan's recordkeeper, Schwab." Defs Mem. at 1 (quoting *Commonspirit*, 37 F.4th t 1169). *CommonSpirit* is irrelevant. Foremost, in denying Defendants' motion for reconsideration of Defendants' Motion to Dismiss following the Sixth Circuit decision in *Commonspirit*, this Court has already held "Plaintiffs' allegations distinguish this case from *CommonSpirit*, so *CommonSpirit* does not change this Court's previous ruling." *Moore v. Humana, Inc.,* 2022 WL 20766504, at *3 (W.D. Ky. Dec. 2, 2022) ("*Moore II*"). At this stage, *CommonSpirit* is even more distinguishable because discovery has proven Defendants failed to obtain reasonable fees for the same services.

**First**, Bray's analysis of the Plan's service agreement with Shwab, Klein's deposition testimony, and the RFP responses evince the Plan was not receiving any special services from

Schwab to justify the excessive fees. Bray Rep. ¶ 57 (citing Klein Dep. 55:22-24, 56:1-11).

**Second**, Bray opined that the Plan's assets grew while the marketplace was experiencing a decline in recordkeeping fees, and "[o]ver this five-year period, the Plan's recordkeeper was making more money while providing the same standard services." Bray Rep. ¶ 55.

**Third**, Bray "confirmed the recordkeeping fee service codes" listed on the comparator plans' publicly filed Form 5500s to ensure compatibility. However, Bray could not look at the "anything that's not public information" for the comparator plans. Bray Dep. 161:19-162:1; *see also* Bray Dep. 162:22-163:5. Bray "also looked at the plan audit on some of these and also the investment options that are in these plans" that may affect recordkeeping prices. *Id*. at 169: 15-19.

**Fourth**, unlike the smaller comparator plans in *CommonSpirit* (and Defendants' benchmarkings), Bray's comparator "plans are mega plans like the Humana plan that have thousands of participants, like the Humana plan [and] have reasonable recordkeeping fees unlike the Humana plan." Bray Dep. 158:1-10.

**Sixth**, the Stipulation made by Fidelity in *Moitoso v. FMR LLC,* 451 F. Supp. 3d 189 (D. Mass. 2020) (the "Stipulation") Bray cites was the product of litigation proceedings, where the recordkeeper stated $21 is the highest negotiated fee for a plan with the same demographics during same time period as the instant Plan, and services for these size plans did not affect fees.

**Seventh**, Bray explained the $12 to $20 reasonable fee range she provided was to account for "the difference in the assets in the participants from [20]15 to present, and, […] because of the different time periods." Bray Dep.174:24-175:3.

Thus, Defendants wrongfully snip Bray's deposition to attempt to state that Bray "conceded that those plans are not 'comparable' to the Plan" Defs. Mem. at 22.[2]

---

[2] Defendants falsely argue Bray "admitted during her deposition that she used no discernable methodology in selecting the plans." Defs. Mem. at 22 n.10. Bray actually testified her approach

**A.**      ***CommonSpirit*** **did not compare that plan to itself, unlike here.**

This Court previously held that "Plaintiffs also include another important comparison: the Plan itself" which "distinguish[es] this case from *CommonSpirit.*" *Moore II,* 2022 WL 20766504, at *3; *see also, Seibert v. Nokia of Am. Corp*., 2023 WL 5035026, at *8 (D.N.J. Aug. 8, 2023) (distinguishing *Commonspirit* because that complaint compared the Plan to itself "from year to year" and alleged defendants "fail[ed] to leverage the size of the Plan."). Both experts agree the Plan's fees remained the same while the market was experiencing a decline, and the Plan was growing in size in a market where larger plans have more bargaining power. *See supra*, section II.a. Like their motion for reconsideration, "Defendants do not argue, nor would it make sense to argue, that the Plan offered dissimilar services compared to itself." *Moore II*, 2022 WL 20766504, at *3. Therefore, Plaintiffs have shown the Plan paid excessive fees for services rendered by comparing the Plan to itself under the prevailing circumstances.

**B.**      **Bray's real world example plans are comparable to the Plan.**

Defendants attempt to argue that Bray's $12-$20 reasonable fee range is "arbitrary and unsupported" and not "tethered to the actual services the Plan received" Defs. Mem. at 21-22(citing *CommonSpirit*, 37 F.4th at 1169.). However, Defendants contradict themselves by also admitting that Bray included six comparator plans that paid fees in line with her reasonable fee range. Defendants attempt to discredit the comparability of the plans by characterizing them as "mere examples", and incorrectly stating Bray did not consider how their services compared to Humana's services. *Id*. Defendants distort Bray's testimony. Bray explained her reasonable fee range was derived from her "experience in requesting proposals for plans" and researching other plans in the market such as the BlackRock and Vanguard plans Bray included in her report. Bray Dep. 144:11-

---

was not "a ***more*** methodical approach" than what she had already explained earlier in her deposition. Bray Dep. 168:24-169:5 (emphasis added).

145:1; 157:2-10.  Again, Bray considered several factors in selecting comparable plans to assess whether the Plan's fees were reasonable. *Id*. at 157:1-159:8. Notably, the only plan comparisons that did not account for similar sized plans and services were Defendants' flawed benchmarking reports.

While dissimilar complaints were unable to "evade the *CommonSpirit* standard" (Defs. Mem. at 24), cases similar to the instant case have distinguished *Commonspirit*. The dismissed complaint in *CommonSpirit* "compared a large plan's fees to 'some of the smallest plans on the market'", whereas the subsequent, upheld complaints "plausibly alleged that there are two types of recordkeeping services provided by all national recordkeepers for large plans and that the Committee failed to use its substantial bargaining power to obtain these same services at a lower cost." *Brown v. MITRE Corp*., 2023 WL 2383772, at *5 (D. Mass. Mar. 6, 2023); *see also Hughes v. Nw. Univ.*, 63 F.4th 615, 632 (7th Cir. 2023) (same); *Garcia v. Alticor, Inc*., 2022 WL 19919753, at *3 (W.D. Mich. Aug. 23, 2022) (the plaintiffs "plead their recordkeeping fees claim in a different manner" than *CommonSpirit*); *Seibert*, 2023 WL 5035026, at *8.

Defendants' cases applying *CommonSpirit* are inapposite. In *TriNet*, the expert did not compare the complex multiemployer plan with any other multiemployer plans, and he admitted the single-employer comparator plans had "significant differences" in recordkeeping fees, underlying costs, and administration. *TriNet*, 2023 WL 3092626, at *5, 10. Defendants' remaining cases are motion to dismiss decisions lacking Plaintiffs' benefit of discovery. Unlike Bray's report, the complaints in *Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108 (W.D. Pa. Aug. 18, 2022) and *Sigetich v. Kroger Co*., 2023 WL 2431667 (S.D. Ohio Mar. 9, 2023) improperly compared the plans at issue to plans half their size. *Mator,* 2022 WL 3566108 at *7; *Sigetich,* 2023 WL 2431667, at *10. As the court in *Sigetich* explained, "common sense dictates that plans of different sizes

have different bargaining power, resulting in different services and/or fees." 2023 WL 2431667, at *10. Ironically, *Mator* and *Sigetich* actually support why Defendants' benchmarking was flawed, not Bray's report. *Miller v. Packaging Corp. of Am., Inc.* is also distinguishable because Bray's report and testimony prove "that the RKA fee charged by the other recordkeepers covered those same services." 2023 WL 2705818, at *6 (S.D. Mich. Mar. 30, 2023). This case is more like *Vellali v. Yale Univ.*, where the court denied the defendants' motion for summary judgment because those plaintiffs "provided evidence that a similarly situated plan was able to negotiate for fees in line with the expert's opinion." 2022 WL 13684612, at *14 (D. Conn. Oct. 21, 2022). Likewise, Bray demonstrates six mega plans paying lower fees than the Plan paid for at least the same services. Plus, comparing the Plan to itself accounts for identical services, "the same plan[,] and the same recordkeeper." *Moore II.*, 2022 WL 20766504, at *3; *see also, Seibert*, 2023 WL 5035026, at *8.

Contrary to Defendants' argument (Defs. Mem. at 25), the Stipulation in *Moitoso* is does constitute an "adequate comparator" because it is an example of a similarly sized plan that achieved lower recordkeeping fees than the Plan through negotiations over roughly the same time period, and it provides that the value of services was "not more valuable than those received by other plans of over $1,000,000,000 in assets." *Moitoso* at 214. The Stipulation was found implausible in Defendants' cited motion to dismiss cases because, unlike Bray's opinion and testimony, those complaints did not analyze the plan at issue's services compared to the stipulation. *See Mateya v. Cook,* WL 4608536, at *6 (S.D. Ind. June 16, 2023); *Wehner v. Genentech, Inc*., 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021). *Fritton v. Taylor Corp*, 2022 WL 17584416, at *7 (D. Minn. Dec. 12, 2022). On the other hand, several courts have found the Stipulation plausibly shows imprudence. *See e.g., Teodosio v. DaVita, Inc*., 2023 WL 4761621, *6 (D. Colo, July 26,

2023); *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 365 (M.D.N.C. 2022); *McDonald v. Lab'y Corp. of Am. Holdings*, 2023 WL 4850693, at *6 (M.D.N.C. July 28, 2023); *Rodriguez v. Hy-Vee, Inc.,* 2022 WL 16648825, at*10 (S.D. Iowa Oct. 21, 2022).

Finally, Defendants also incorrectly state that Bray's reasonable fee range "ignored more than half of the relevant period" despite the market's decline in fees over the same period. Defs. Mem. at 22 n.10. As mentioned above, Bray testified that her range is poignantly due to the decline in fees over the Class Period, alongside the Plan's increased bargaining power. Put differently, the lower end of the range accounts for later in the Class Period as the market for fees was declining and the Plan's bargaining power grew with the Plan's size, whereas the higher end applies to the earlier years of the Class Period. In ERISA cases, "there is no easy way to determine the extent of a loss from a breach that may have been diffuse and spread out across time . . . the plaintiff need not provide a perfect estimate of how much loss the breach caused." *Ramos v. Banner Health*, 1 F.4th 769, 780 (10th Cir. 2021). Indeed, ERISA cases permit a range of reasonable fees. *See e.g. Moitoso*, 451 F. Supp. 3d at 214; *United States v. Robinson*, 2016 WL 7030447, at *2 (E.D. Ky. July 8, 2016), *aff'd*, 705 F. App'x 458 (6th Cir. 2017) (the expert permissibly "estimate[d] a range of loss to Medicare" over a period of five years).

It is indisputable that Defendants failed to adhere to the industry standard of care under the prevailing circumstances of the Plan and marketplace. Bray's report proves the Plan could have achieved lower fees between $12 to $20 for the same services throughout the Class Period. Summary judgment should be granted because there is no dispute that Defendants breached their duty of prudence resulting in losses to the Plan and participants.

## IV.   **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Summary Judgment should be granted.

DATED: February 20, 2024        **CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
(admitted *Pro Hac Vice*)
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
(admitted Pro Hac Vice)
2933 N. Front Street
Harrisburg, PA  17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email:  donr@capozziadler.com

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: */s/Mark K. Gyandoh*
Mark K. Gyandoh, Esq.